Grafton,  }
May 3, 1904. }

SARGENT *v.* LITTLE *& a.*

COLE *& a. v.* SAME.

72    555
f74   320

No action can be maintained against the members of the state board of license commissioners, in their official capacity, to recover fees and forfeitures paid to their treasurer in the regular course of business.

In acting upon applications for licenses, the state board of license commissioners perform judicial duties, and the members are not individually liable in any form of action for errors of judgment or unintentional mistakes.

A town which accepted the provisions of chapter 95, Laws 1903, agreeably to section 31 of that act, had authority to fix the fees for liquor licenses at the maximum sum, by a vote taken at the same meeting.

Under an article in a warrant for a town-meeting, to determine whether licenses for the sale of liquor shall be granted "and to pass any vote relating thereto," the town may lawfully raise the fees for such licenses to the maximum sum permitted by statute.

ASSUMPSIT, to recover money paid by the plaintiffs to the defendants, who constitute the state board of license commissioners. The cases were tried at the November term, 1903, of the superior court before *Wallace,* C. J., who found a verdict for the defendants in each, subject to the plaintiffs' exceptions.

May 12, 1903, the town of Lebanon voted to accept the provisions of chapter 95, Laws 1903, and to raise the license fee in each class to the maximum sum permitted by that act. On the

same day the town of Enfield voted to accept the provisions of the act and to raise the fee for a second-class license to $1,000. The article in the Enfield warrant was as follows: " Shall licenses for the sale of liquor be granted in this town under the provisions of 'An act to regulate the traffic in intoxicating liquor,' passed at the January session of the general court, 1903, and pass any vote relating thereto."

The plaintiff in the first action applied for a third-class license for the town of Lebanon and deposited $150 with his application. The plaintiffs in the second case applied for a second-class license for the town of Enfield and deposited $250 with their application. The defendants refused to issue the licenses until the fees fixed by the respective towns were paid. The plaintiffs thereupon paid the required amounts, and after the licenses had been issued brought these suits to recover the sums paid in excess of the fees established by the act in cases where there is no action on the subject by the town.

*Frederick T. Woodman* and *Mitchell & Foster*, for the plaintiffs.

*Edwin G. Eastman*, attorney-general, for the defendants.

YOUNG, J. No action can be maintained against the license commmissioners as such to recover back either fees or forfeitures paid to their treasurer in the regular course of business, for there is no provision in the act which permits it. They are not a corporation, but public officers, and the treasurer of the board is the state so far as such money is concerned. *Gross* v. *Commissioners*, 68 N. H. 389; Laws 1903, *c.* 95, *s.* 10. Neither can an action be maintained against the defendants as individuals for any mistakes they may make in respect to issuing licenses. When they act on applications for licenses they are performing judicial duties, for they have to find from the evidence whether or not the applicant is entitled to the license and determine the amount of the fee he should pay. *Pittsfield* v. *Exeter*, 69 N. H. 336; *Bradley* v. *Laconia*, 66 N. H. 269; *Boody* v. *Watson*, 64 N. H. 162.

Whenever public officers are performing judicial duties their liabilities are determined by the rules of law applicable to a judicial officer; so the test to decide whether or not public officers incur any individual liability for what they do or leave undone when they are performing judicial duties is: Would a judicial officer, having the same jurisdiction of the parties and of the subject-matter, be individually liable for doing what they did? No action, civil or criminal, can be maintained against a judicial officer for any mistake he may make in the performance of his official

duties, provided he has jurisdiction of the parties and of the subject-matter. *Lange* v. *Benedict*, 73 N. Y. 12. He has jurisdiction of the parties when they voluntarily appear in a proceeding pending before him, as well as when they are served with process within his jurisdiction. He has jurisdiction of the subject-matter in any action pending before him if he has power to act on the general question to which the proceeding relates. So the question whether he had jurisdiction of the subject-matter in a particular case does not depend on whether the evidence shows he was warranted in doing what he did, but whether under any circumstances he could do it. *Hunt* v. *Hunt*, 72 N. Y. 217, 230-233. The defendants have the power to grant licenses. Whenever licenses are applied for they have jurisdiction of the parties and of the subject-matter, and are not liable individually if they make a mistake in respect to issuing them. *Fawcett* v. *Dole*, 67 N. H. 168; *McDaniel* v. *Tebbetts*, 60 N. H. 497; *Odiorne* v. *Rand*, 59 N. H. 504; *Edes* v. *Boardman*, 58 N. H. 580; *Burnham* v. *Stevens*, 33 N. H. 247; *Evans* v. *Foster*, 1 N. H. 374.

This disposes of the cases; but as both parties have argued the effect of the action of the towns in respect to raising the fees for licenses, and as the decision of this question will probably avoid further litigation, it has been considered. *Currier* v. *Davis*, 68 N. H. 596; *Contoocook Fire Precinct* v. *Hopkinton*, 71 N. H. 574, 576.

Section 31, chapter 95, Laws 1903, provides in substance that after the third Tuesday of May, 1903, the sale of liquor shall be lawful in such cities and town as shall accept the provisions of the act, and makes it the duty of every city and town in the state to act on that question upon the preceding Tuesday. Section 32 authorizes "any city by vote of its city councils, and any town where this act is in force," to raise the license fees, but does not fix the time when this shall be done. The manifest purpose of this chapter is to permit each city and town in the state to decide for itself whether or not liquor may lawfully be sold within its limits; and if it decides to permit the sale, to fix within certain limits the amounts those who engage in the business must pay for the privilege. Since the law fixes the time when the sale of liquor shall be legal and when towns shall vote on the question of permitting its sale, and provides that towns may raise the license fees without fixing a time for doing so, the presumption, in the absence of all evidence, would be that the legislature intended they might act on both questions at the same time. There is nothing in the act except section 32 which has any tendency to prove that the legislature intended that towns should act on the question of raising license fees only at a meeting called after they

had voted to accept the provisions of the act. It is clear that fixing the time when towns might vote on this question formed no part of the purpose for which that section was incorporated into the bill. At that time the bill contemplated that the sale of liquors should be legal in all cities until May 1, 1905, but only in such towns as voted to accept the provisions of the act. House and Senate Jour. 493. The words " any city . . . and any town where this act is in force may . . . raise the license fee," is but another way of saying that towns which decide to permit the sale of liquor may legislate in respect to license fees. The presumption that the legislature intended that all the provisions of the act should go into effect in cities and towns at the same time, and that it intended all licensees of the same class in any town should pay the same license fees, is evidence that the legislature intended that the power conferred upon towns to raise license fees as prescribed by the act might be exercised at the time of the decision that licenses might be issued. If it intended that towns should not vote on this question until they had time to call another meeting after they had accepted the provisions of the act, it must also have intended for the first year after the law was in force, either that cities could and towns could not raise the license fees, or that in towns the amounts to be paid for licenses should depend on the time when they were issued. The law contemplated that licenses should be issued in one week after a town voted to permit the sale of liquor. The warrant for a town-meeting must be posted at least two weeks before the day of the meeting, so that it would be impossible for a town to hold a meeting called after it had voted to accept the provisions of the act and before licenses could be issued authorizing the holders to sell liquor in that town for the ensuing year. It follows, that if the legislature intended that towns should not act on the question of raising the fees except at a meeting called after they had voted to permit the sale of liquor, it must also have intended that those who had obtained licenses before the town could act on that question should pay the fees prescribed by the act, and those who were unable to procure licenses until after the town had voted should pay the fees fixed by the town; for there is no provision in the act which permits the commissioners to recall licenses if a town votes to raise the fees after they are issued, nor one which permits them to issue licenses for the fees prescribed in the act after the town has voted to increase them. It is clear that the legislature intended that towns should act in respect to raising license fees before licenses could be issued, and there is no reason why they should not have done it at the time they did.

If the article in the Enfield warrant gave the voters notice that

raising the license fees was one of the matters to be acted on at the meeting, it is sufficient. *Baker* v. *Shephard*, 24 N. H. 208, 212. The article was in the form prescribed by the act for submitting the question of its acceptance to the voters (*s.* 31), with the addition of the words " and to pass any vote relating thereto." As the only matter upon which they could pass in relation to the act, in addition to accepting its provisions, was raising the fees prescribed by it, the article gave the voters sufficient notice that the question of raising fees might be acted on at that meeting. *Brackett* v. *McIntire, ante, p.* 67.

<em>Exceptions overruled.</em>

All concurred.