Rockingham
No. 82-282

NANCY SALTZMAN

v.

MELVIN SALTZMAN
THE TOWN OF KINGSTON
EDWIN F. PECKER

MELVIN SALTZMAN

v.

THE TOWN OF KINGSTON

MELVIN SALTZMAN

v.

EDWIN F. PECKER

February 23, 1984

518

*Fisher, Moran, Willoughby, Clancy & White,* of Dover (*Edward T. Clancy* on the brief and orally), for Nancy Saltzman.

*Cooper, Hall, Whittum & Shillaber, P.C.,* of Rochester (*Peter A. Handy* on the brief and orally), for Melvin Saltzman.

*Kearns, Colliander, Donahue & Tucker, P.A.,* of Exeter (*David S. Brown* on the brief and orally), for the Town of Kingston and Edwin F. Pecker.

BROCK, J. This appeal involves three personal injury actions, consolidated for trial in the superior court, that arose out of a motor vehicle collision in Kingston. The defendants and one of the plaintiffs, Melvin Saltzman, allege that the Trial Court (*Contas*, J.) erred in its instructions to the jury and in the admission of certain evidence at trial. For the reasons that follow, we reverse and remand the cases for a new trial.

On the evening of February 13, 1978, Melvin Saltzman, accompanied by his wife Nancy, was driving his Toyota automobile in a southerly direction on Route 125 in Kingston. At the same time, the Kingston fire department was responding to a fire alarm. Although clear and dry, the night was extremely cold. Volunteer fireman Edwin Pecker, accompanied by Robert Guyette, drove a fire truck out of the fire house and down Hunt Road in an easterly direction toward the intersection with Route 125, about 500 feet from the fire house.

At that intersection, there is an overhead flashing traffic signal, which is activated only during fire alarms by means of a switch at the fire house. None of the firemen activated this signal, and it was not flashing at the time of the collision.

There is a stop sign on Hunt Road at the entrance to the intersection. It was the fire department's practice to stop at the sign before turning onto Route 125. As he approached the intersection, Mr. Pecker observed the Saltzman vehicle approaching from the north, but drove into the intersection without stopping, intending to turn left onto Route 125. As he did so, the Saltzman vehicle collided with the fire truck, the left front of the Saltzman's car striking the middle of the left side of the truck.

Both Mr. and Mrs. Saltzman sustained serious facial injuries when their heads hit the windshield, as well as various other injuries. The two firemen were not injured. The Saltzmans were rendered unconscious, and both later testified that they had no memory of the collision itself, though Melvin Saltzman testified that he remembered approaching the intersection. He also stated that he did not remember seeing or hearing the fire truck.

It is undisputed that Mr. Saltzman was traveling at or below the speed limit at the time of the collision. There was no evidence that he ever applied his brakes or attempted to swerve in order to avoid the truck. Because the so-called "blizzard of '78" had occurred just a few days before, the roads were lined with snowbanks at least four feet high.

The Saltzmans brought suit for negligent infliction of personal injury. Nancy Saltzman sued Melvin Saltzman, Edwin Pecker, and the Town of Kingston, as a municipal entity, for its failure to acti-

vate the overhead traffic signal and under a theory of respondeat superior for the negligence of the defendant Edwin Pecker. Melvin Saltzman sued the Town of Kingston and Edwin Pecker as agent/employee of the Town of Kingston, and included a claim for loss of consortium.

On the first day of trial, May 19, 1982, Nancy Saltzman settled her claim against Melvin Saltzman for $20,000, the maximum available under his liability insurance policy. Thus, Melvin Saltzman is involved in this appeal only as a plaintiff.

During trial, Mr. Saltzman took timely exceptions to certain evidentiary rulings by the trial court, and both he and the defendants excepted to various aspects of the court's charge to the jury.

The jury returned a special verdict, finding: (1) that the Town of Kingston, Edwin Pecker, and Melvin Saltzman had all been negligent; (2) that their negligence had helped to cause the accident to the degree of 40 percent, 15 percent, and 45 percent, respectively; (3) that Melvin Saltzman should be awarded $3,000 in damages to compensate him for his injuries, but nothing for his loss of consortium; and (4) that Nancy Saltzman should be awarded $50,000 to compensate her for all her injuries.

On June 10, 1982, the trial court granted Melvin Saltzman's motion for additur and increased his award to $6,000. The court denied the defendants' motion to set aside the verdict. The defendants appealed, and the plaintiff Melvin Saltzman filed a cross-appeal.

We will deal with each of the issues raised by the parties:

## I. *Comparative Negligence*

■■ The parties concede that this court recently decided one of the issues discussed in their briefs. In *Hurley v. Public Service Company of New Hampshire*, 123 N.H. 750, 465 A.2d 1217 (1983), we held that RSA 507:7-a, the comparative negligence statute, permits a plaintiff in a multiple defendant negligence action to recover so long as his negligence does not exceed the total causative negligence of all the defendants. *Id.* at 756, 465 A.2d at 1220. Accordingly, the jury's finding here that Mr. Saltzman was more negligent than the Town or Mr. Pecker individually, but less than the two of them combined, does not prevent his recovery.

## II. *The Effect of Settlement*

■ A second question raised below involves the combined application of RSA 507:7-c and RSA 524:1-b. The trial court did not rule on this issue, and a ruling is not essential to our disposition of the case, but we address it here in the interest of judicial economy and

in order to avoid further litigation. *See Sargent v. Little*, 72 N.H. 555, 557, 58 A. 44, 45 (1904). RSA 507:7-c requires the court to reduce a verdict against joint tortfeasors by the amount of any settlement received from any of them; RSA 524:1-b requires the court to add "to the amount of damages interest thereon from the date of the writ or the filing of the petition to the date of such verdict or finding." The rate of interest is set by RSA 336:1 (Supp. 1981) at 10 percent annually.

The defendants argue that any award of damages to Nancy Saltzman must be reduced by the amount of her $20,000 settlement with Melvin Saltzman *before* interest is added to the award for purposes of determining the liability of the Town and Mr. Pecker. This argument is inconsistent both with directly applicable precedent and with the defendants' admission in their brief that "it is logical to assume that Melvin Saltzman's carrier paid $20,000 figuring in liability, interest, and costs." If the $20,000 settlement included interest, then it must necessarily have included *less* than $20,000 in damages. It follows that, if the total damages were $50,000, the remaining defendants would be liable for more than $30,000 in damages, as well as for any interest due the plaintiff that was not included in the settlement amount.

We have held that settlements, such as that involved here, are presumed to include discharge of *all* the liability of the settling defendant: damages, interest, and costs. *Hampton v. Delaney*, 115 N.H. 675, 676, 349 A.2d 602, 604 (1975). Since the plaintiff is entitled to interest on all her damages from the day of the writ, RSA 524:1-b, the settlement amount must be subtracted from the total liability, including interest, of all the defendants, and not merely from the total amount of *damages. Id.* Of course, the defendants are entitled to a setoff for interest accrued on the settlement amount *after* the date of settlement, since the plaintiff was not deprived of the use of the settlement amount after the date of that payment. *Id.*; *Shepard v. General Motors Corporation*, 423 F.2d 406, 408 (1st Cir. 1970).

III. *Applicability of RSA 262-A:7, VI (Supp. 1977)*

This brings us to the dispositive issues in the case. The defendants argue that the trial court erred in refusing to instruct the jury as to the possible application of RSA 262-A:7, VI (Supp. 1977) (since amended and recodified as RSA 265:8). The statute in its entirety reads as follows:

"*262-A:7 Emergency Vehicles.*

I. A person operating an emergency vehicle, as defined in

RSA 259:1, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.

II. The driver of an emergency vehicle may:

(a) Park or stand notwithstanding the provisions of Title XXI.

(b) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation.

(c) Exceed the maximum speed limits so long as he does not endanger life or property.

(d) Disregard regulations governing direction of movement or turning in specified directions.

III. The exemptions herein granted to an emergency vehicle shall apply only when such vehicle is making use of audible and visual emergency signals or when an emergency vehicle is in pursuit of an actual or suspected violator of the law.

IV. Any person engaged in part time law enforcement and who uses his own vehicle shall not display operating emergency lights when not on duty.

V. The provisions of RSA 262-A:7, II and III shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.

VI. An operator of a motor vehicle being operated on the ways of this state upon the approach from any direction of an emergency vehicle with the siren or flashing light in operation shall turn immediately as far as possible toward the right-hand side of the way and shall bring his vehicle to a stand-still until such emergency vehicle has passed."

The trial judge read all applicable portions of this statute to the jury except paragraph VI, and gave no grounds for that exception. Melvin Saltzman argues: (1) that paragraph VI is inapplicable because there was no evidence that he saw or heard the fire truck, and thus he could not have acquired any duty under the statute; and (2) that any claim to the contrary is inconsistent with the defendants' contention at trial that Melvin Saltzman was negligent *by reason of* his failure to see or hear the truck.

■■ We find this argument unpersuasive. The general rule is that "[t]he duty to yield the right of way to an emergency vehicle arises only when a motorist observes or hears, *or under the circumstances should have observed or heard,* the audible and visual warnings of such vehicle." *Cassity v. Williams,* 373 So. 2d 586, 591 (La. App. 1979) (emphasis added). Thus, if on the evidence before it a rational jury could find that Mr. Saltzman should have seen or heard the truck's warning signals, then RSA 262-A:7, VI (Supp. 1977) was applicable to the case and should have been presented to the jury with appropriate instructions. *Belleau v. Hopewell,* 120 N.H. 46, 53, 411 A.2d 456, 460 (1980).

The evidence presented at trial, including the testimony of the two firemen and the transcribed statement of a motorist who had been driving behind the Saltzman vehicle, would have permitted a rational trier of fact to find that the fire truck's warning lights were on and that Mr. Saltzman could have seen them over the snowbanks lining the roads. The credibility and weight to be given this evidence, in view of the conflicting evidence from other eyewitnesses, were for the jury to decide. *Gowen v. Brothers,* 121 N.H. 377, 379-80, 430 A.2d 159, 160-61 (1981).

■ We hold that the court should have read paragraph VI to the jury, with instructions that the statute would help define Mr. Saltzman's duty only if the jury found that he saw or heard, or in the circumstances should have seen or heard, the truck's warning signals. This would, of course, require a preliminary finding by the jury that either the siren or the lights were in actual operation before the collision.

IV. *Misstatement of Applicable Law*

The second error in the court's charge to the jury was the court's misstatement, on two occasions, of the language of RSA 262-A:7, III (Supp. 1977), quoted above. The statute provided that the driver of an emergency vehicle would be granted certain exemptions from the traffic laws "only when such vehicle is making use of audible *and* visual emergency signals." (Emphasis added). The court twice, first in its original charge and again when the jury requested a re-reading of the statute, instructed the jury that the exemptions applied when *either* audible or visual signals were in operation.

■ The court thus failed to adequately set out the applicable law, *Belleau v. Hopewell,* 120 N.H. at 53, 411 A.2d at 460, and the error was amplified by the fact that no eyewitness claimed to have heard a siren, while one motorist stated that he saw the truck's

warning lights. Therefore, the jury could have been misled into finding that the statutory exemptions applied when, under a correct reading of the statute, they would not have so found. *See Bernier v. Demers*, 121 N.H. 217, 218, 427 A.2d 514, 515 (1981).

## V. *Reference to Contributory Negligence*

 The court's references to "contributory negligence" were made in terms of the currently applicable comparative negligence law, which reads: "Contributory negligence shall not bar recovery in an action by any plaintiff . . . if such negligence was not greater than the causal negligence of the defendant. . . ." RSA 507:7-a. The court's charge simply paraphrased this language. It was not so phrased as to mislead the jury, and did not constitute error. *See Bernier v. Demers supra.*

## VI. *Irrelevant Evidence*

 Since there was no claim that Mr. Saltzman ever attempted to apply his brakes, evidence concerning the condition of his car's tires should have been excluded as irrelevant, *i.e.*, as lacking any "tendency to establish a fact of consequence to the determination of the action." *Welch v. Bergeron*, 115 N.H. 179, 182, 337 A.2d 341, 343 (1975).

## VII. *Opinion Evidence*

 The court also improperly admitted opinion testimony by Kingston police officers regarding the legal duties of the parties and causation of the accident. One officer testified that, in his opinion, Mr. Pecker was "in his rights" when he ran the stop sign. The chief of police was allowed to testify about causation by giving his opinion that "excessive speed" of the Saltzman vehicle was a primary cause of the collision, although it was undisputed that Mr. Saltzman was traveling at or below the speed limit at the time. The only possible basis for the latter opinion was an assumption that either the road conditions or the presence of an emergency vehicle had created a legal duty in Mr. Saltzman to reduce his speed. While opinion evidence (expert or otherwise) is not excludable solely because it bears directly on a main issue in the case, *Rau v. Stores*, 97 N.H. 490, 494–95, 92 A.2d 921, 924 (1952), it is admissible only if it might "aid the jury in their search for the truth." *Dowling v. Shattuck*, 91 N.H. 234, 236, 17 A.2d 529, 532 (1941); *see Currier v. Grossman's*, 107 N.H. 159, 161, 219 A.2d 273, 274–75 (1966).

> "The result is that a witness may not testify to an opinion
> or conclusion which contains matters of law. On mixed

questions of law and fact the jury, after being properly instructed by the court as to the law, can draw the required conclusion from the facts as well as can the expert, so that the opinion of the witness, be he expert or layman, is superfluous in the sense that it will be of no assistance to the jury."

*Prudential Insurance Co. of America v. Uribe*, 595 S.W.2d 554, 566 (Tex. Civ. App. 1979).

██ ██ Thus, the opinion of one police officer that Mr. Pecker was "in his rights" when he ran the stop sign should have been excluded. This involved a pure conclusion of law. The opinion of the officer on causation should have been excluded, for there was no foundation on which the court could have found the officer qualified to give an opinion on that subject. This type of opinion testimony is to be contrasted with evidence that is admissible on the issue of causation because it involves only matters of *fact. Id.*; *cf. Currier v. Grossman's supra.*

## VIII. *Statements by Deceased Eyewitness*

██ The transcribed statement of an eyewitness who died before trial was properly admitted (over an objection on grounds of hearsay) on an implied finding of its trustworthiness, coupled with the requirement of necessity due to the death of the declarant. *Piper v. Fickett*, 113 N.H. 631, 632, 312 A.2d 698, 699 (1973).

## IX. *Conclusion*

Melvin Saltzman's remaining arguments are without merit. Due to the various errors discussed above, the cases are remanded to the superior court for a new trial.

*Reversed and remanded.*

All concurred.