Hillsborough-southern judicial district
No. 92-639

RICHARD BREAGY

v.

RONALD STARK & a.

May 19, 1994

*Thomas Craig, PA*, of Manchester (*Paul D. Parnass* on the brief, and *H. Nina Bernard* orally), for the plaintiff.

*Wiggin & Nourie, P.A.*, of Manchester (*Dennis T. Ducharme* on the brief and orally), for the defendants.

THAYER, J. This dispute arises out of an automobile collision on Route 28 in Salem. Following a trial in the Superior Court (*Dalianis*, J.), the jury found the plaintiff, Richard Breagy, fifty percent at fault, and set total damages at sixty-five thousand dollars. The plaintiff appeals, arguing that the trial court erred by: (1) denying the plaintiff's motions to exclude record evidence obtained by the defendants from the plaintiff's former employer; (2) excluding opinion testimony from the investigating police officer regarding fault or causation; (3) refusing to instruct the jury concerning the sudden emergency doctrine; and (4) denying the plaintiff's motions to set aside the verdict and for additur. We affirm.

On the afternoon of September 14, 1989, defendant Ronald Stark was operating a delivery van owned by his employer, defendant Granite State Snack Foods. It had rained earlier that day, and the road surface was still wet when Stark executed a left-hand turn across two lanes of oncoming southbound traffic. The plaintiff, traveling southbound, saw Stark's vehicle turn in front of him and applied his brakes. The plaintiff lost control of his vehicle, spinning and eventually colliding with a third vehicle that had been behind Stark's van in the northbound lanes. Of the parties involved in this action, only the plaintiff sustained injury. Stark was not injured, as his van did not collide with any vehicles during the incident.

## I. Use of Employment Application

During pretrial discovery related to the plaintiff's claim for lost wages, the plaintiff authorized the defendants to obtain copies of his payroll records, subject to several restrictions. Contrary to the express conditions of the authorization, the defendants subpoenaed a complete copy of the plaintiff's personnel file from Tropicana Products, Inc., the plaintiff's first employer following the collision. Upon receipt of these records, approximately one week before trial, the defendants forwarded a copy of the file to the plaintiff. One page from the file, page two of the defendant's four-page employment application with Tropicana, may not have been forwarded to the plaintiff. At trial, the defendants used portions of the plaintiff's Tropicana employment application, including page two, to attack the plaintiff's credibility, obliging him to admit on the witness stand that he had lied on the application about his work experience and physical fitness during the months following the collision. Claiming that the defendants had violated the terms of the authorization, engaged in unfair surprise, and violated the notice provisions of RSA 517:4 (1974), the plaintiff unsuccessfully moved to exclude the use of the Tropicana application.

■ ■ On appeal, the plaintiff first asserts that the trial court committed reversible error when it admitted evidence obtained in violation of the plaintiff's authorization. We disagree. Discovery is proper as long as the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." SUPER. CT. R. 35(b)(1). Absent a claim of privilege or irrelevance, a party may not limit the scope of an adverse party's discovery request. *Id.*; *see also Jarvis v. Prudential Ins. Co.*, 122 N.H. 648, 654, 448 A.2d 407, 411 (1982). Where discovery ultimately yields relevant evidence, the trial court's admission of the evidence "will not be disturbed unless it is clearly untenable or unreasonable to the prejudice of the case." *Great Lakes Aircraft Co. v. City of Claremont*, 135 N.H. 270, 295, 608 A.2d 840, 856 (1992) (quotation omitted); *see also* N.H. R. EV. 402, 403.

■ If the defendants had adhered to the plaintiff's limited authorization, they would not have discovered other records contained in the Tropicana personnel file. As these other records might well have contained information regarding the plaintiff's prior work history and representations about his health, a discovery request for these records appears reasonably calculated to yield relevant evidence pertaining to lost wages and ability to work. *See* SUPER. CT. R. 35(b)(1). As the plaintiff did not claim that the records in his Tropicana personnel file were privileged, *cf. Daigle v. City of Portsmouth*, 131 N.H. 319, 328, 553 A.2d 291, 296 (1988), or irrelevant, *see* SUPER. CT. R. 35(b)(1), he had no authority to limit the defendants' discovery. We therefore cannot conclude that the trial court's admission of relevant evidence extracted from the Tropicana records was untenable or unreasonable to the prejudice of the case. *See Great Lakes Aircraft Co.*, 135 N.H. at 295, 608 A.2d at 856.

■ ■ The plaintiff next argues that the defendants' use of the subpoenaed employment application at trial constituted unfair surprise, necessitating reversal. Unfair surprise at trial "must be something unexpectedly arising under circumstances which the party was not reasonably called upon to anticipate, and which ordinary prudence and foresight could not guard against." *Welch v. Gonic Realty Trust Co.*, 128 N.H. 532, 535, 517 A.2d 808, 809 (1986). In the instant case, we find it hard to believe that the plaintiff was unfairly surprised by the defendants' use of a document that had been forwarded to him one week before trial. Moreover, the defendants' use of the document to impeach the plaintiff regarding his lost wage claim and ability to work did not amount to an entirely new theory of defense.

*Cf. id.* at 535–36, 517 A.2d 809–10. The document enhanced the evidentiary record from which the jury could determine lost wages and ability to work. Finally, assuming that the defendants did not forward page two of the four-page document to the plaintiff, the plaintiff could still have obtained a copy of the entire document from Tropicana or requested a copy of the missing page from the defendant in advance of trial. The plaintiff, therefore, through ordinary prudence and foresight, could reasonably have anticipated not only that the Tropicana application would be introduced at trial, but also that it would be used to challenge his claim of lost wages and inability to work. Accordingly, the trial court did not err in refusing to find unfair surprise.

The plaintiff also asserts that the trial court abused its discretion by failing to suppress the Tropicana application in light of the defendants' violation of RSA 517:4, which requires notice to an adverse party of a pending discovery deposition. The subpoena issued by the defendants to the Tropicana representative expressly informed him that he was "required to appear . . . for a deposition." The cover letter that accompanied the subpoena, however, informed the representative that he was "not required to appear pursuant to the subpoena." The defendants clarified this discrepancy at oral argument, conceding that they never intended to conduct a deposition in connection with the subpoena and, therefore, had no need to provide corresponding notice to the plaintiff of the sham deposition. *See* RSA 517:4.

■ When a party violates a statute or rule in pursuit of discoverable evidence, a trial court may, in its discretion, impose sanctions on the errant party, *cf. Daigle*, 131 N.H. at 325–26, 553 A.2d at 295, including suppression of any inappropriately obtained documents. As we have already held, however, the facts of this case, including the uncontested relevance of information contained within the Tropicana application, foreclose the possibility that the trial court abused its discretion in refusing to suppress the records, *see* N.H. R. Ev. 403, and preclude us from holding that the court's actions were untenable or unreasonable to the prejudice of the case. *See Great Lakes Aircraft Co.*, 135 N.H. at 295, 608 A.2d at 856.

## II. Police Officer's Opinion Testimony

At a pretrial hearing and again at trial, the plaintiff sought to have the investigating police officer include in his testimony an allocation of fault between the parties and a conclusion as to the cause of the collision. The defendants, citing *Johnston v. Lynch*, 133 N.H. 79, 574

A.2d 934 (1990), and *Saltzman v. Town of Kingston*, 124 N.H. 515, 475 A.2d 1 (1984), moved *in limine* to exclude all opinion testimony concerning fault or causation, asserting that the jurors were perfectly qualified to analyze the factual evidence and draw their own conclusions. The trial court agreed with the defendants and granted their motion.

We have held that a police officer's opinion testimony concerning the fault and cause of a collision must be excluded when it involves mixed questions of law and fact. *Saltzman*, 124 N.H. at 524–25, 475 A.2d at 6. A properly instructed jury "can draw the required conclusion from the facts as well as can the expert, so that the opinion of the witness, be he expert or layman, is superfluous in the sense that it will be of no assistance to the jury." *Id.* at 525, 475 A.2d at 6 (quotation omitted). In *Johnston*, we noted that essentially all of the evidence relied upon by the officer in drawing his conclusions regarding fault and causation "was available to the jurors so that his testimony would not have assisted them in their search for the truth." *Johnston*, 133 N.H. at 88, 574 A.2d at 940.

■ The plaintiff argues that it was error for the trial court to deny the investigating officer the opportunity to testify as to fault or causation because here, unlike in *Johnston*, the officer was qualified as an "accident reconstruction expert" and had arrived on the scene prior to the vehicles having been moved. *See id.* at 87, 574 A.2d at 939. The plaintiff, however, mischaracterizes the appropriate inquiry. The issue is not whether the officer's testimony regarding fault or causation will be reliable, but whether the jury can draw its own conclusions from the same set of facts. In this case, the jury heard from numerous fact witnesses, viewed the accident scene, saw photographs showing the resting points of the vehicles, and heard the investigating police officer's testimony as to everything he observed and surmised at the scene of the collision, except for his conclusions on fault or causation. Because conclusions drawn by the investigating officer would not have further assisted the jury in this case, the trial court did not abuse its discretion by excluding those conclusions from the jury's purview. *See Johnston*, 133 N.H. at 88; 574 A.2d at 939–40; N.H. R. Ev. 702; *cf. Currier v. Grossman's*, 107 N.H. 159, 161, 219 A.2d 273, 274–75 (1966) (admission of investigating officer's opinion as to causation deemed proper exercise of trial court's discretion because such testimony might have assisted the jury).

*III. Sudden Emergency Doctrine*

The plaintiff next argues that the trial court erred in denying the plaintiff's request to charge the jury on the sudden emergency doc-

trine. The plaintiff's proposed jury instruction number 4, which the trial court denied, reads as follows:

"If you find that Defendant Ronald Stark by his actions created an emergency situation to which Plaintiff Richard Breagy had to react, then you are instructed that you may not hold Plaintiff Breagy to be comparatively negligent in the way in which he responded to the emergency situation which Defendant created. One who creates or contributes to an emergency situation may not subsequently use it as a shield to liability."

(Citation omitted.)

■ Under the sudden emergency doctrine, liability may be avoided only if sufficient evidence exists to support a finding that:

"(1) a sudden and unforeseen emergency situation actually existed; (2) *the situation was not created by the negligence of the person seeking the instruction*; and (3) the person seeking application of the doctrine had alternative courses of action available and chose, if not the wisest course of action, one which a reasonably prudent person under such circumstances might have taken."

*Gagnon v. Crane*, 126 N.H. 781, 786, 498 A.2d 718, 721 (1985) (emphasis added). Although the second sentence of the plaintiff's proposed instruction correctly notes that "[o]ne who creates or contributes to an emergency situation may not subsequently seek to use it as a shield to liability," *id.* at 787, 498 A.2d at 722, the first sentence of the instruction asks jurors to consider only whether the *defendant's* actions created the emergency situation. Under the appropriate standard, however, the person "seeking the instruction" (the plaintiff in this case) cannot benefit from the sudden emergency doctrine if his negligence created or contributed to the emergency situation. *Id.* at 786, 787, 498 A.2d at 721, 722. In its entirety, therefore, the proposed instruction could have misled the jury. Accordingly, the trial court did not err in refusing to give the instruction as worded by the plaintiff. *See Caliri v. N.H. Dept. of Transportation*, 136 N.H. 606, 608, 620 A.2d 1028, 1029 (1993).

■ Furthermore, even if the plaintiff had correctly phrased the instruction, its exclusion in this case would not have been error. The circumstances preceding the plaintiff's collision, as reflected in the record, epitomize an emergency situation that reasonable drivers should anticipate. *See Gagnon*, 126 N.H. at 785–87, 498 A.2d at 721–

22. In addition, trial courts have been cautioned against the use of the sudden emergency doctrine instruction, in part because of the "propensity to confuse [the jury] which is inherent in the sudden emergency doctrine." *Id.* at 788, 498 A.2d at 723. We hold, therefore, that the trial court did not err in refusing to give a sudden emergency doctrine instruction in this case, as the absence of such an instruction avoided the possibility of jury confusion and did not diminish the adequacy of the jury instructions overall. *See Johnston,* 133 N.H. at 91, 574 A.2d at 941.

*IV. Motions to Set Aside Verdict and For Additur*

Finally, the plaintiff claims that the trial court should have set aside the verdict or granted additur, in light of the "overwhelming evidence" of the defendants' fault and of the "extensive damages" suffered by the plaintiff.

 A jury verdict may be set aside (1) if it is conclusively against the weight of the evidence, or (2) if it is the result of mistake, partiality, or corruption separate and apart from evidentiary considerations. *Broderick v. Watts,* 136 N.H. 153, 162, 614 A.2d 600, 606 (1992). As the plaintiff's argument focuses exclusively on evidentiary issues, we need only analyze his claim under the first prong of this test.

 The plaintiff asserts that the jury was presented "unrefuted" evidence that the accident caused him $14,000 in medical expenses, a herniated disc, and a permanent twenty-five percent whole person impairment requiring physical therapy. In addition, the plaintiff cites the testimony of one witness to assert that there was "overwhelming" evidence of the plaintiff's lack of contributory negligence. Our close examination of the record, however, reveals ample evidence, including conflicting testimony from several eyewitnesses, from which a reasonable jury could conclude that the plaintiff was fifty percent at fault for the collision, as well as evidence supporting the jury's finding of the total damages. We hold that the jury's verdict was not conclusively against the weight of the evidence, and therefore, the trial court did not err in refusing to set aside the verdict or grant additur. *Cf. Belanger v. Teague,* 126 N.H. 110, 111, 490 A.2d 772, 772 (1985) (additur is not a feasible remedy unless damages are inadequate).

*Affirmed.*

BROCK, C.J., did not sit; the others concurred.