NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Original
No. 2018-0208

PETITION OF NEW HAMPSHIRE SECRETARY OF STATE
AND NEW HAMPSHIRE ATTORNEY GENERAL

Argued: November 27, 2018
Opinion Issued: January 24, 2019

Gordon J. MacDonald, attorney general (Anne M. Edwards, associate attorney general, and Anthony J. Galdieri, assistant attorney general, on the brief, and Mr. Galdieri orally), and Cleveland, Waters, and Bass, P.A., of Concord (Bryan K. Gould, Cooley A. Arroyo, and Callan E. Maynard on the brief), for the petitioners.

McLane Middleton, Professional Association, of Manchester (Wilbur A. Glahn, III and Steven J. Dutton on the joint brief), Paul Twomey, of Epsom, on the joint brief, and Perkins Coie LLP, of Washington, D.C. (Mark Erik Elias, John M. Devaney, Bruce V. Spiva, Amanda R. Callais, Elisabeth Frost, and Uzoma Nkwonta on the joint brief, and Mr. Spiva orally), for the League of Women Voters of New Hampshire, Douglas Marino, Garrett Muscatel, Adriana Lopera, Phillip Dragone, Spencer Anderson, and Sesha Mehta.

Shaheen & Gordon, P.A., of Concord (William E. Christie and S. Amy Spencer on the joint brief), for the New Hampshire Democratic Party.

LYNN, C.J.  The court accepted this petition for original jurisdiction, see Sup. Ct. R. 11, to determine whether the Superior Court (Temple, J.) erred in ordering the New Hampshire Secretary of State and the New Hampshire Attorney General, defendants in litigation pending before that court, to produce to the plaintiffs in the litigation, the League of Women Voters of New Hampshire, the New Hampshire Democratic Party, and various individuals, the New Hampshire Centralized Voter Registration Database established pursuant to RSA 654:45 (Supp. 2018).  We conclude that the Database is exempt from disclosure by statute, and we therefore vacate the trial court's order.

I

The record establishes the following pertinent facts.  The cases[1] before the trial court involve challenges to the lawfulness of Senate Bill 3 (SB 3) under the New Hampshire Constitution.  Enacted as Laws 2017, chapter 205 and codified in RSA chapter 654, SB 3 changes the way in which persons must substantiate their domicile when registering to vote.  See generally RSA 654:2 (Supp. 2018); RSA 654:7 (Supp. 2018); RSA 654:7-a (Supp. 2018); RSA 654:7-b (Supp. 2018); RSA 654:12 (Supp. 2018).  The procedure for verifying one's domicile under the new law differs depending on whether registration takes place more than 30 days before an election or within 30 days of an election, including on election day.  The plaintiffs allege that SB 3 violates the New Hampshire Constitution because it: (1) unduly burdens the equal right to vote guaranteed to all persons domiciled in New Hampshire; (2) contradicts the domicile requirements therein; (3) denies prospective registrants the equal protection of the law; and (4) is void for vagueness.

During discovery, the plaintiffs requested the current version of the Database, as well as the completed past versions of the Database "as of April 1, 2009, 2011, 2013, 2015, 2017, or the date on which the [D]atabase contained the complete voter history following the 2008, 2010, 2012, 2014, and 2016 General Elections."

Unlike voter checklists, which contain only "the full name, domicile address, mailing address, and party affiliation, if any, of each voter on the checklist," RSA 654:25 (Supp. 2018), and which, subject to limited exceptions, are public records subject to RSA chapter 91-A, see RSA 654:31 (2016); RSA 654:31-a (Supp. 2018), the Database contains substantially more personal

---

[1] The litigation before the trial court was initiated by two separate complaints, one filed by the New Hampshire Democratic Party and the other filed by the League of Women Voters of New Hampshire and several individual plaintiffs.  The trial court thereafter consolidated the cases.

information about each respective voter, including the following: voter date of birth, gender, driver's license number, last four digits of social security number (for voters without a driver's license number), place of birth, naturalization information, place where and name under which last registered to vote, form of identification used to prove identity, whether the voter is in the military service or located overseas, information concerning use of absentee ballots, and voting history. At the time of the discovery request, RSA 654:45, VI provided:

> The voter database shall be private and confidential and shall not be subject to RSA 91-A and RSA 654:31. The secretary of state is authorized to provide voter database record data to the administrative office of the courts to assist in the preparation of master jury lists pursuant to RSA 500-A and to the clerk of the District Court of the United States for the District of New Hampshire to assist in the preparation of federal court jury lists. The voter checklist for a town or city shall be available pursuant to RSA 654:31. Any person who discloses information from the voter database in any manner not authorized by this section shall be guilty of a misdemeanor.

RSA 654:45, VI (2016).

The defendants objected to production of the Database on the grounds that it was irrelevant and was not subject to disclosure under RSA 654:45, VI. The plaintiffs moved to compel production and, following a hearing, the trial court granted the motion. The court found that the Database was relevant because it contains material that the plaintiffs' expert could use to provide the court with information about the persons who are burdened by SB 3 and the extent of the burden. Specifically, given the plaintiffs' allegations that SB 3 makes same-day voter registration more difficult and that same-day registrants are more likely to support Democratic candidates, the court found that information as to the identities and voting patterns of same-day registrants that could be gleaned from the Database would shed light on the issues in dispute.[2]

---

[2] Relying on an affidavit submitted by Deputy Secretary of State David Scanlan, the court observed that "the Database contains a significant amount of information regarding registration and domicile," including:

> (1) whether the voter registered 30 days or less prior to an election or on election day; (2) whether the voter provided evidence of domicile when registering or subsequently; (3) whether the voter initialed a verifiable action of domicile (if yes, whether the voter provided evidence of domicile); (4) whether a voter who did not provide proof of domicile initialed the voter registration form indicating that they were not aware of having any evidence of domicile; and (5) [f]or voters who register and do not provide proof of domicile when registering a yes/no value for whether: (a) the voter used the verifiable action of domicile section of the voter registration form; (b) the voter initialed that he or she possesses proof of domicile and will provide the proof after the election; (c) whether the voter

3

The court next concluded that the Database was not exempt from discovery by virtue of RSA 654:45, VI. The court recognized that RSA 654:45, VI, as then in effect, made the Database "private and confidential and . . . not . . . subject to RSA 91-A (the Right to Know Law) and RSA 654:31 (which makes the voter checklists maintained by each municipality open to public inspection)," and provided that "[a]ny person who discloses information from the voter database in any manner not authorized by this section shall be guilty of a misdemeanor." However, the court disagreed with the defendants' position that these terms created a statutory privilege. Rather, relying on Marceau v. Company, 97 N.H. 497 (1952),[3] the court ruled that, while the foregoing language demonstrated that the Database was to be confidential, in the sense that it was not to be voluntarily disclosed by the defendants, it did not amount to "a clear legislative mandate" prohibiting the production of the Database "for use in judicial proceedings." See Marceau, 97 N.H. at 498-500.[4] In so ruling, the court contrasted the language found in RSA 654:45, VI with that used in statutes such as RSA 151:13-a, II (2005) and RSA 400-A:37, IV-a(a) (2018), which specifically provide that the materials protected by their provisions shall not be subject to discovery or subpoena. See RSA 151:13-a, II (noting that the covered materials "shall be protected from direct or indirect means of discovery, subpoena, or admission into evidence in any judicial or administrative proceeding"); RSA 400-A:37, IV-a(a) (providing that the covered materials "shall not be made public by the commissioner or any other person and shall be

provided the evidence; or (d) whether the voter initialed that he or she was not aware of possessing any proof of domicile. (Quotations omitted.)

[3] Marceau dealt with an action for assault and battery by a tenant against her landlord. Marceau, 97 N.H. at 497. During discovery, the landlord sought production of the tenant's employment records from the Unemployment Compensation Bureau. Id. At the time, the Unemployment Compensation Act provided that information "obtained from an individual pursuant to the administration of this chapter shall be confidential and shall not be published or be open to public inspection (other than to employers and public employees in the performance of their public duties) in any manner revealing the individual's or employing unit's identity," and imposed a penalty for violations of its statutory provisions. Id. at 498 (quotation and ellipses omitted). We rejected the Director of Security's argument that this language created a statutory privilege, reasoning that while the legislature certainly intended that the records not be open to the public, it was "by no means plain . . . that use of the records in evidence in judicial proceedings was intended to be forbidden . . . ." Id. at 498-99. Supporting our conclusion was the fact that the original iteration of the statute had explicitly provided that the information could not be used in a court action unless the commissioner was a party, but this prohibition was subsequently deleted in later versions of the statute. Id. at 499. In our view, the obligation to furnish relevant information in the administration of justice should not be limited "without a clear legislative mandate." Id. at 499-500.

[4] The court also relied on Marceau in rejecting the argument that the criminal penalty provided for by the statute for unauthorized disclosures precluded the defendants from producing the Database in discovery. The court reasoned that, as Marceau explained, production of the covered materials in response to a subpoena would not expose the department employees to the criminal penalty because "the evil intended to be forestalled and prevented [by the penalty] clause of the statute was the voluntary imparting by State employees of information [they] acquired. It was not intended to impede the administration of justice in the courts by the suppression of pertinent testimony." Marceau, 97 N.H. at 500.

4

confidential by law and privileged, shall not be subject to RSA 91-A, shall not be subject to subpoena, and shall not be subject to discovery or admissible in evidence in any private civil action").

The court also rejected the defendants' argument that the information sought by the plaintiffs could be obtained through means other than the Database. Citing Breagy v. Stark, 138 N.H. 479, 482 (1994), and Desclos v. S. N.H. Med. Ctr., 153 N.H. 607, 615-16 (2006), the court reasoned that the availability of alternative sources was a relevant consideration only when dealing with privileged information. In light of its conclusions that the Database was both relevant and non-privileged, the court ruled that the possible existence of other sources for the information it contains did not preclude the plaintiffs from obtaining production of the Database through discovery. The court recognized that the Database contains a "significant amount of private information," but concluded that this concern could be addressed through the issuance of a protective order. It therefore ordered the parties to meet and confer, and submit a proposed protective order to the court within ten days.

The plaintiffs proposed a protective order in which they agreed to limit production to only those fields of the Database that they believed were necessary to their expert's analysis, which excluded disclosure of voters' driver's license and social security numbers. The plaintiffs also agreed that the portions of the Database produced to them would not be maintained on any devices connected to the internet, would be accessed only by plaintiffs' attorneys and experts, and would be promptly returned to the defendants at the conclusion of the litigation. Not satisfied with these proposed limitations, the defendants filed the instant petition for original jurisdiction, which this court accepted on May 23, 2018.[5]

While the case was pending before this court, the legislature responded to the trial court's order by amending RSA 654:45, VI. Added as a floor amendment to a pending bill, the purpose of the legislation was explained as follows:

> Based on the highly confidential information contained in the voter registration database, including information obtained in the absentee ballot process, the legislature reiterates that this

---

[5] In the petition for original jurisdiction, in addition to seeking interlocutory review of (1) the trial court's order requiring the defendants to produce the Database (Question 1), the defendants also sought interlocutory review of (2) the trial court's orders requiring the defendants to produce discovery concerning all communications and meetings within and between the defendants' offices regarding SB 3 (Question 2), and (3) the trial court's orders denying the defendants' motions to dismiss based on the plaintiffs' lack of standing (Question 3). This court's May 23 order accepted the petition with respect to Question 1 only. The May 23 order also denied the plaintiffs' motion for summary affirmance of the trial court's orders.

information must be protected and shall not be disclosed except as set forth in RSA 654:45 and never in response to a subpoena or civil discovery request.

Laws 2018, 329:7. To accomplish this purpose, the legislature adopted and the Governor signed into law an amendment to RSA 654:45, VI, which added the highlighted language to the first sentence thereof: "The voter database shall be private and confidential and shall not be subject to RSA 91-A and RSA 654:31, nor shall it or any of the information contained therein be disclosed pursuant to a subpoena or civil litigation discovery request." Laws 2018, 329:8, (codified as amended at RSA 654:45, VI (Supp. 2018)) (emphasis added). The amendment took effect on June 25, 2018.

II

Although we generally review trial court decisions regarding discovery management and related issues deferentially under our unsustainable exercise of discretion standard, Kukesh v. Mutrie, 168 N.H. 76, 80-81 (2015), where, as here, the court's ruling is based on its construction of a statute, our review is de novo, see ATV Watch v. N.H. Dep't of Transp., 161 N.H. 746, 752, 763 (2011).

The defendants contend that the trial court erred in construing the version of RSA 654:45, VI in effect at the time of its order as not making the Database exempt from discovery in civil litigation. The plaintiffs, on the other hand, argue that the trial court correctly applied our decision in Marceau in concluding that the Database is subject to discovery. We find it unnecessary to decide whether the trial court's application of Marceau was correct or erroneous, or whether its construction of the pre-amendment version of RSA 654:45, VI was correct or erroneous. Even if we assume that the trial court did correctly construe the statute as then in effect, the 2018 amendment to the statute conclusively demonstrates that the legislature disagreed with the trial court's construction and effectively overruled that decision. As we have frequently had occasion to observe, subject only to constitutional limitations, when the legislature disagrees with a judicial decision, it is at liberty to change the law through statutory enactment. See, e.g., Tuttle v. N.H. Med. Malpractice Joint Underwriting Assoc., 159 N.H. 627, 648 (2010) ("Unless otherwise inhibited by either the State or Federal Constitutions, the Legislature may change existing laws, both statutory or common, at its pleasure, but in so doing, it may not deprive a person of a property right theretofore acquired under existing law." (quotation omitted)); see also Hogan v. Pat's Peak Skiing, LLC, 168 N.H. 71, 75 (2015); State v. Dor, 165 N.H. 198, 205-06 (2013).

Citing Appeal of Silk, 156 N.H. 539 (2007), the plaintiffs argue that a statute that adversely affects a person's substantive rights may not be applied

retroactively.  See id. at 542.  That is true enough, but here, unlike the attorney's fees at issue in Silk, which we held were "indistinguishable from other liabilities and rights" that accrued at the time of injury under the workers' compensation law, id. at 543, the trial court's order did not confer upon the plaintiffs a substantive or "vested" right to obtain the Database.  Indeed, given the facts that (1) the decision was a non-final discovery order that was subject to revision by the trial court within its sound discretion at any time prior to final judgment, see State v. Haycock, 139 N.H. 610, 611 (1995) (noting that the trial court retains the discretion to correct its decision on pretrial evidentiary matters any time prior to final judgment); A-Mark Auction Galleries v. American Numismatic, 233 F.3d 895, 897 (5th Cir. 2000) ("Discovery orders generally do not end the litigation on the merits and leave nothing for the court to do but execute the judgment." (quotation and brackets omitted)), and (2) the Database had not actually been disclosed to the plaintiffs at the time the interlocutory appeal was filed by the defendants, it is clear that, at most, the plaintiffs had a mere "expectation based on an anticipation of the continuance of existing law" that they would gain access to the Database, Tuttle, 159 N.H. at 648 (quotation omitted).  Such expectancy is not sufficient to establish a vested right.  Id.; see In the Matter of Goldman & Elliot, 151 N.H. 770, 774 (2005) ("A perfect vested right can be no other than such as is not doubtful, or depending on any contingency, but absolute, fixed, and certain." (quotation omitted)); Church Mut. Ins. Co. v. Dardar, 145 So. 3d 271, 281 (La. 2014) (explaining that a vested right is one that is "absolute, complete and unconditional, independent of a contingency").

Furthermore, the 2018 amendment of RSA 654:45, VI addresses the issue of discovery, a quintessentially procedural matter.  See McDuffey v. Boston & Maine R. R., 102 N.H. 179, 181 (1959) (noting that civil discovery is a procedural aid for the parties in litigation); see also Jacob v. Chaplin, 639 N.E.2d 1010, 1012 (Ind. 1994) ("Discovery is the process by which the parties to an action ascertain the existence of material facts previously unknown."). "Where a statute is . . . procedural in nature, there is a presumption that it applies to cases pending at the time of its enactment."  In re Snow Estate, 120 N.H. 590, 592 (1980); 73 Am. Jur. 2d Statutes § 240, at 470 (2012) ("Procedural laws apply both prospectively and retroactively unless there is legislative expression to the contrary.").  Such application does not offend the constitutional prohibition on retrospective laws.  See Gelinas v. Mackey, 123 N.H. 690, 695 (1983); see also Landgraf v. USI Film Products, 511 U.S. 244, 275 (1994) ("Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity."); Campus Communications, Inc. v. Earnhardt, 821 So. 2d 388, 397, 401 (Fla. Dist. Ct. App. 2002) (upholding application of statute making autopsy photographs confidential to autopsy performed before its enactment because statute was remedial and did not infringe vested rights); Dahl v. Sittner, 474 N.W.2d 897, 901 (S.D. 1991) (explaining that statute altering requirements for obtaining

discovery in regards to claims for punitive damages was procedural and therefore was properly applied to claim arising before statute took effect); 82 C.J.S. Statutes § 579, at 763 (2009) (noting that amendments to a procedural law apply to all pending cases whether or not the cause of action accrued prior to the change).

In light of the foregoing authorities, the plaintiffs' argument that the amendment should not apply retroactively to this case necessarily fails. Indeed, this claim rests on the plaintiffs' assumption that the law was substantive and that they had a vested right to the information contained within the Database. The rights were not vested given that there was no final judgment and the trial court retained the discretion to reverse itself on the matter. See Haycock, 139 N.H. at 611; A-Mark Auction Galleries, 233 F.3d at 897. Nor could the law be classified as substantive. See In the Matter of Goldman & Elliot, 151 N.H. 770, 772 (2005) ("When engaging in [a Part I, Article 23 constitutional] analysis, we distinguish new laws that affect substantive rights and liabilities from those that solely affect procedures or remedies enforcing those rights."). "While there is no precise definition of either substantive or procedural law, it is generally agreed that a substantive law creates, defines and regulates rights while a procedural law prescribes the methods of enforcing such rights or obtaining redress." Morrison v. Ocean State Jobbers, Inc., 180 F. Supp. 3d 190, 197 (D. Conn. 2016) (quotation and brackets omitted); Church Mut. Ins. Co., 145 So. 3d at 283 ("By definition substantive laws establish new rules, rights, and duties or change existing ones," while "[p]rocedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws." (quotation and brackets omitted)). Put another way, "the purpose of procedural law is to facilitate decision of the case on the merits." Nashua v. Public Utilities Commission, 101 N.H. 503, 506 (1959). Here, the substantive law at issue is the right to vote under the New Hampshire Constitution. The Database is sought only to aid in deciding whether the substantive law has been violated. Id.

Notwithstanding that the law is procedural, the plaintiffs argue that it would be "exceptionally problematic" to apply the 2018 amendment retroactively in this case because it involves a situation "where a self-interested party changed the law to interfere directly with a pending lawsuit, thereby insulating itself and a law it passed — SB 3 — from full, meaningful review." There are two answers to this argument. First, the only basis the plaintiffs offer in support of their claim that the legislature acted for the purpose of inhibiting them from discovering evidence that would allegedly reveal the unconstitutionality of SB 3 is the bare circumstance that the 2018 amendment was enacted as a response to the trial court's discovery order. But that circumstance simply will not bear the weight which the plaintiffs ask it to carry. The reason is that the circumstance is equally susceptible to the conclusion that the legislature acted for the purpose of maintaining the

8

confidentiality of the Database, which the legislature deemed important to preserve.

Second, the plaintiffs do not cite — nor are we aware of — any authority supporting the proposition that we may refuse to enforce a duly enacted legislative directive merely because doing so would make it more difficult for the plaintiffs to pursue a challenge to another law enacted by the legislature. Aside from their allusion to a separation of powers violation, an issue we address below, the plaintiffs do not contend that the 2018 amendment violates any other provision of the State or Federal Constitutions. That being the case, we are aware of no legal basis upon which we could fail to give effect to the legislation. In this regard, we note that, to the extent the plaintiffs suggest that the legislature acted with a nefarious motive in enacting SB 527, such motivation "is not a recognized basis for declaring a statute unconstitutional." Libertarian Party N.H. v. State, 154 N.H. 376, 387 (2006).

Finally, citing Merrill v. Sherburne, 1 N.H. 199 (1818), the plaintiffs suggest that the enactment of the 2018 amendment contravenes the separation of powers provision of Part I, Article 37 of the State Constitution because it amounts to a legislative revision of a judgment of the judiciary. See Merrill, 1 N.H. at 210 ("But the judiciary would in every respect cease to be a check on the legislature, if the legislature could at pleasure revise or alter any of the judgments of the judiciary."). Merrill, however, is readily distinguishable from this case. In that case, the enactment which the court struck down was legislation that granted a new trial to a litigant after the court had entered a final judgment against him. Id. at 205. Indeed, it cannot be disputed that "state legislatures cannot, as a general rule," pass legislation "reviving [a suit] that has already abated." 16 C.J.S. Constitutional Law § 309, at 400-01 (2015). In contrast, the interlocutory trial court discovery order which the 2018 amendment modified does not amount to a judgment that is immune from revision by legislation prior to the time it attains the status of a final judgment. See Merrill, 1 N.H. at 213-14 ("Nor can acts of the legislature be opposed to those fundamental axioms of legislation before particularized, unless they impair rights which are vested . . . ; and if, before the rights become vested in particular individuals, the convenience of the state produces amendments or repeals of those laws, those individuals have no cause of complaint. The power that authorizes or proposes to give, may always revoke before an interest is perfected in the donee."); see also United States v. Schooner Peggy, 5 U.S. (1 Cranch) 103, 107-10 (1801) (holding that a treaty calling for restoration of vessels "not yet definitively condemned," which became effective while the condemnation order was on appeal, applied to the proceeding and required reversal of the trial court's judgment). In sum, the "[s]eparation of powers principles do not preclude the Legislature from amending a statute and applying the change to both pending and future cases, though any such law cannot readjudicate or otherwise disregard judgments that are already final." Armijo v. Miles, 26 Cal. Rptr. 3d 623, 633 (Ct. App.

2005) (quotation and brackets omitted).  Because there was no final judgment to be disturbed here, the constitution is not offended by the legislative action.

Vacated.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.