Hillsborough-northern judicial district
No. 93-166

MARK CYR

v.

J.I. CASE COMPANY AND
HAROLD D. SMITH & SONS, INC.

December 14, 1994

*McLane, Graf, Raulerson & Middleton, P.A.,* of Manchester (*Bruce W. Felmly & a.* on the brief, and *Mr. Felmly* orally), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Chiesa,* of Manchester (*John A. Lassey* on the brief and orally), for the defendants.

JOHNSON, J. This products liability case arose when a bulldozer backed into the plaintiff, Mark Cyr, and crushed his leg. Defendant J.I. Case Company (Case) manufactured the bulldozer and sold it to defendant Harold D. Smith & Sons, Inc. (Smith); Smith sold it to Cyr's employer, who used it on the construction site where Cyr was working when the accident happened. Cyr

sued the defendants in strict liability and negligence. At trial, causation was a major issue, and the litigation focused on the bulldozer's lack of a back-up alarm and Cyr's failure to notice the vehicle's approach. The jury returned special verdicts for the defendants, and Cyr appealed, alleging the following errors in the Superior Court's (*Groff,* J.) rulings: (1) admission of evidence that Cyr received workers' compensation benefits; (2) exclusion of lay opinion testimony; (3) exclusion of expert opinion testimony; (4) exclusion of evidence of subsequent modifications; and (5) exclusion of Cyr's requested jury instruction on the defense of "plaintiff's misconduct." We hold that the superior court abused its discretion in admitting evidence that Cyr received workers' compensation benefits, and we reverse on that basis.

## I. Admission of Evidence of Cyr's Workers' Compensation Benefits

At trial, Cyr sought damages for the wages he lost while unemployed after the accident. The defendants questioned whether the accident was the sole cause of the unemployment and solicited testimony from Cyr that he had turned down jobs he was capable of performing. Over Cyr's objection, they also asked him about his receipt of workers' compensation benefits, implying that this money had made work unnecessary and had thus contributed to the unemployment. The trial court allowed this questioning and instructed the jury:

> Now, if you find during your deliberations that Mr. Cyr's entitled to damages and that you're going to decide how much lost wages he's suffered, you are not allowed to deduct from whatever you determine, would determine his lost wages were, you're not allowed to deduct any benefits he might have received from workman's [*sic*] comp. However, you can consider the fact that he received compensation during this period solely for the purpose of determining his motivation to work at that time and basically whether or not you believe or you find that this period of unemployment was due to his disability or to some other reason, and that's the only reason you can consider it and I want to make that quite clear.

The court later twice gave a similar instruction.

On appeal, Cyr relies upon the collateral source rule, which provides that an award of damages may not be reduced by the amount of benefits a plaintiff receives from a collateral source. *See Bell v. Primeau,* 104 N.H. 227, 228, 183 A.2d 729, 730 (1962); *Abbott v. Hayes,* 92 N.H. 126, 132–33, 26 A.2d 842, 847 (1942). The

defendants do not challenge the validity of this rule. Instead, they argue that the trial court properly admitted the evidence of benefits for the limited purpose of proving a motive not to work and thus impeaching Cyr on the nature and extent of his injuries. *Cf.* N.H. R. Ev. 105 (evidence inadmissible for one purpose may be admitted for another). We hold that the evidence should not have been admitted because it plainly fails the balancing test contained in New Hampshire Rule of Evidence 403.

■ Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." We find the probative value of the evidence for the defendants' stated purpose to be minimal at best. We accept the defendants' contention that receipt of income may give a person a motive not to work. On the other hand, workers' compensation benefits are only supposed to be paid to those unable to work. *See* RSA 281-A:28, :28-a, :31, :31-a (Supp. 1993). Receipt of benefits could thus support a claim of disability, rather than undermine it, unless one assumes that benefits are generally received dishonestly or in error. Because two contrary conclusions could be drawn from the disputed evidence, the probative value for either one of them is minimal.

As noted above, the defendants asked Cyr whether he had failed to pursue certain jobs he was capable of performing. Cyr's answer was equivocal, but we acknowledge that an admission of work capacity would help the defendants attack Cyr's credibility because it would show, among other things, that he might have received the workers' compensation benefits dishonestly. Proof of benefits received, however, would not itself show lack of disability because—we assume—dishonesty and error are the exception, not the rule. *Cf. Blessing v. Boy Scouts of America,* 608 S.W.2d 484, 487 (Mo. Ct. App. 1980). Thus, evidence of Cyr's workers' compensation benefits was only probative when combined with evidence of work capacity to show a possible dishonesty in his receipt of these benefits. Considering that the defendants could and did attack Cyr's credibility directly by asking about his work capacity during his periods of unemployment, we assign a marginal probative weight to the evidence of benefits.

On the other side of the Rule 403 balance, we find a serious danger of unfair prejudice, confusion of the issues, and misleading the jury. When the trial court admitted the evidence in dispute, it could not know whether the jury would find for Cyr on the issue of liability and thus reach the issue of damages. The court therefore had to instruct the jury not to deduct the workers' compensation

benefits from any award of damages, while telling them that they could consider the benefits in gauging Cyr's credibility on the issue of damages. This instruction would be confusing to even the most discriminating juror. Although a real distinction exists between the permissible and the impermissible uses of the evidence, it is not easy to grasp. We do not impugn the intelligence of the average juror by concluding that the collateral source rule could have easily been violated in this situation. *Cf. Eichel v. New York Central R.R.,* 375 U.S. 253, 255 (1963); *Brumley v. Federal Barge Lines, Inc.,* 396 N.E.2d 1333, 1340 (Ill. App. Ct. 1979); *Reinan v. Pacific Motor Trucking Co.,* 527 P.2d 256, 259 (Or. 1974).

As the defendants point out, the jury here never reached the point of calculating damages, instead returning special verdicts for the defendants on liability. We reject, however, the defendants' claim that this renders the trial court's ruling harmless. In similar circumstances, the Supreme Court of Florida cogently reasoned:

> Because a jury's fair assessment of liability is fundamental to justice, its verdict on liability must be free from doubt, based on conviction, and not a function of compromise. Evidence of collateral source benefits may lead the jury to believe that the plaintiff is trying to obtain a double or triple payment for one injury, or to believe that compensation already received is sufficient recompense. Despite assertions that collateral source evidence is needed to rebut or impeach, there generally will be other evidence having more probative value and involving less likelihood of prejudice than the victim's receipt of insurance-type benefits.

*Gormley v. GTE Products Corp.,* 587 So. 2d 455, 458 (Fla. 1991) (citations and quotations omitted); *cf. Pryor v. Webber,* 263 N.E.2d 235, 242–43 (Ohio 1970).

■ The defendants also contend that admission of the evidence was harmless because one of Cyr's exhibits—a voluminous collection of medical records—contains some references to Cyr's receipt of workers' compensation benefits. In effect, they argue that Cyr waived any objection to their use of the evidence because Cyr introduced it first. Again, we disagree. Contrary to the defendants' suggestion, in context the references are insignificant and in no way imply that Cyr's receipt of benefits contributed to his loss of wages. Cyr's use of the evidence was entirely different from the defendants' and did not "open the door" or create an unfair advantage for him that would justify the later admission.

*See State v. Bouchard,* 138 N.H. 581, 583–85, 643 A.2d 963, 965–66 (1994).

In conclusion, we acknowledge the deference to be accorded a trial court's ruling on the admission of evidence, *State v. VanDerHeyden,* 136 N.H. 277, 285, 615 A.2d 1246, 1249–50 (1992), but hold that the court plainly abused its discretion in admitting evidence of Cyr's receipt of workers' compensation benefits. The minimal probative value of this evidence to rebut Cyr's claim of lost wages was substantially outweighed by the dangers of unfair prejudice, confusion of issues, and misleading the jury. N.H. R. Ev. 403. Cyr has met his burden of showing that the court's ruling was "clearly untenable or unreasonable to the prejudice of [his] case," *VanDerHeyden,* 136 N.H. at 284, 615 A.2d at 1250, and we accordingly vacate the jury's verdicts and remand for a new trial. We address the remaining questions Cyr raises on appeal, as they are likely to arise again on remand.

## II. Exclusion of Lay Opinion Testimony

Cyr was injured while he was checking the grade of a road and a bulldozer operator was leveling dirt and gravel. While Cyr knelt on the ground, the bulldozer moved toward him from his left, in reverse gear. Nancy Linda-Marie Veilleux Tarbox, a flagger, stood slightly behind Cyr and to his right. She was looking over his shoulder when the bulldozer hit him; neither noticed the bulldozer's approach until it was too late. At a videotaped deposition, Tarbox testified as follows on examination by Cyr's attorney:

> Q. Okay. And if this bulldozer had been equipped with a back-up alarm, you would agree, would you not, that this accident likely would not have happened?

> [Defendants' Counsel]: I'm going to object. That's totally speculative based on what she's testified so far. There's no foundation for that.

> *Q. By [Cyr's Counsel]: Ma'am, based on your experience with back-up alarms, construction equipment, and your observations of the speed with which this bulldozer moved back and forth, you would agree, would you not, that if this bulldozer had a back-up alarm that you would have had sufficient warning before the accident happened?*

> [Defendants' Counsel]: I object to that for the same reason.

> *A. I—I don't know. Probably, yes.*

Q. By [Cyr's Counsel]: Okay. This is, in fact, the second time today that you've testified under oath?

A. Yes.

. . . .

Q. And I asked you pretty much the same question earlier this morning, and you said, did you not, that you felt that if a back-up alarm had been equipped on this bulldozer that the accident likely would not have happened?

A. Yes.

Q. And that's still your view right now; isn't it?

A. Yes.

(Emphasis added.) At trial, the court played Tarbox's videotaped deposition for the jury but deleted the entire portion quoted above at the defendants' request. On appeal, Cyr asserts error in this exclusion.

We first address the admissibility of the highlighted portion of the quoted testimony, concerning Tarbox's opinion of her own probable reaction to a back-up alarm. Admission is governed by New Hampshire Rules of Evidence 602, 701, and 704. Rule 602 reads:

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness. This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses.

Rule 701 provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the testimony or the determination of a fact in issue.

Rule 704 states that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." A witness, however, may not ordinarily give an opinion regarding a

matter of law. *See Breagy v. Stark,* 138 N.H. 479, 484, 642 A.2d 329, 333 (1994); *Saltzman v. Town of Kingston,* 124 N.H. 515, 524–25, 475 A.2d 1, 6 (1984).

■ Tarbox's opinion about her own probable reaction to a back-up alarm satisfies all of these evidentiary principles. First, she rationally based her opinion on her own perception and personal knowledge of the accident and surrounding circumstances. Her testimony reveals a familiarity with the work performed by Cyr and the bulldozer driver, as well as the operation of back-up alarms and the noise level of the construction site. Moreover, she vividly described the moment her attention was first drawn to the bulldozer's approach and her reaction to it. We appreciate that the usual witness can only make informed predictions as to "what might have been," but Tarbox's opinion, based on self-knowledge and a perception of her environment, is neither far-fetched nor irrational. In *Sullivan v. LeBlanc,* 100 N.H. 311, 315, 125 A.2d 652, 655–56 (1956), a case involving a two-car accident, this court upheld admission of one driver's testimony that he " 'would have slowed down and given [the other driver] the right of way' " if the other driver had signaled an intention to turn. *See Dimock v. Lussier,* 86 N.H. 54, 59, 163 A. 500, 503 (1932); *Reed v. Nashua Buick Co.,* 84 N.H. 156, 161, 147 A. 898, 901 (1929); *cf.* N.H. R. Ev. 701 reporter's notes ("The Rule is in accord with New Hampshire law."). We conclude that Tarbox's opinion about her own probable reaction to a back-up alarm on the bulldozer satisfies Rule 602 and Rule 701(a).

We also find that her testimony meets Rule 701(b)'s requirement that an opinion be "helpful to a clear understanding of the testimony or the determination of a fact in issue." Causation was one of the primary issues of the trial. The jury had to determine, as best it could, what would have happened had the bulldozer been equipped with a back-up alarm. Tarbox's opinion was plainly relevant to this issue: if a back-up alarm would have given Tarbox sufficient warning, the jury could infer that it would have given Cyr sufficient warning, too. *See* N.H. R. Ev. 401. Tarbox's opinion was also helpful in the literal sense because a description of the numerous facts and observations that led her to this conclusion would likely have been impractical, inefficient, and a waste of time. *See* G. LILLY, AN INTRODUCTION TO THE LAW OF EVIDENCE § 4.9, at 107 (1987). Moreover, Tarbox was obviously in a much better position to judge her own behavior than was the jury. *Cf. Saltzman,* 124 N.H. at 524–25, 475 A.2d at 6 (superfluous opinions not helpful to jury).

Finally, we conclude that Tarbox's opinion about her own probable behavior involved only issues of fact, not law. She made no effort to assign blame or liability, but merely stated that a back-up alarm would probably have given her "sufficient warning." *See Breagy,* 138 N.H. at 484, 642 A.2d at 333; *Saltzman,* 124 N.H. at 524–25, 475 A.2d at 6.

■ We now consider the admissibility of the remaining portion of the testimony quoted above, concerning Tarbox's opinion that a back-up alarm would have prevented the accident. We do not think this opinion satisfies the requirements of Rule 701(b) because it is not "helpful to a clear understanding of the testimony or the determination of a fact in issue." The questions asked of Tarbox in this part of the deposition required her to speculate about Cyr's probable response to a hypothetical situation. Although Tarbox's conclusions may have been rationally based on her perception of Cyr and her personal knowledge about him, *see* N.H. R. Ev. 602, 701(a), we do not believe she was in any better position to read his mind and predict his behavior than was the jury. Her opinion followed a detailed description of the events leading up to the accident and her observations of Cyr's behavior. The jury heard all of this and could draw its own conclusions. Accordingly, Tarbox's opinion was superfluous, *cf. Saltzman,* 124 N.H. at 525, 475 A.2d at 6, and thus, not helpful.

### III. Exclusion of Expert Opinion Testimony

At trial, Cyr presented the testimony of expert witnesses Dwight Blakeman, a construction safety consultant, and David Dodge, a certified safety professional. The trial court allowed both men to testify that a back-up alarm on the bulldozer would have allowed the average person in Cyr's position to avoid the accident, but the court prohibited them from stating that such an alarm would have allowed Cyr to avoid his fate. On appeal, Cyr argues that the court should have admitted this proffered testimony, pursuant to Rule 702. Although we decline to determine whether the trial court abused its discretion, we find that, if Cyr lays a proper foundation on remand, such expert opinion testimony would not be prohibited by the rule.

Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The reporter's

notes to the rule observe that "[o]pinion evidence in New Hampshire . . . has a broader scope than in other jurisdictions."

█ The defendants concede in their brief that the trial court properly admitted the experts' testimony that a back-up alarm would have allowed the average person in Cyr's position to avoid the accident. Our review of the experts' qualifications and the bases for their opinions reveals no error in this concession. Our only question then is whether the scope of the witnesses' testimony could properly extend beyond the realm of the average person and into that of a particular person. We conclude that, so long as the experts based their opinions about Cyr's likely reactions on a reasonable comparison of his characteristics with those of the average person, Rule 702 would not prohibit admission of the proffered testimony.

## IV. *Exclusion of Evidence of Subsequent Modifications*

At trial, Cyr sought to admit evidence that, soon after the accident, Cyr's employer installed a back-up alarm on the 450C Case bulldozer that injured him and that, in 1987, Case made back-up alarms standard equipment on all 450C bulldozers. (Previously, such alarms were optional.) The trial court largely excluded this evidence, citing New Hampshire Rule of Evidence 407. Cyr first argues that Rule 407 does not apply to strict liability causes of action, and therefore, the evidence was admissible on his strict liability claims. We disagree.

Rule 407 states:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Federal Rule of Evidence 407 is identical, and most Circuit Courts of Appeals, including the First Circuit, apply the federal rule in strict liability cases. *See* Taylor & Gacioch, *Evidence of Subsequent Remedial Measures: Admissible or Not?*, 60 DEF. COUNS. J. 618, 618 (1993); *see also Raymond v. Raymond Corp.*, 938 F.2d 1518, 1522–23 (1st Cir. 1991). The reporter's notes to the New Hampshire rule state:

> The Federal Rule does not answer the question of whether subsequent remedial measures are inadmissible in strict liability cases . . . . Despite the clear trend in the law on this issue the [New Hampshire Rules] Committee felt that resolution of this issue was best left to judicial interpretation because the issue is still a matter of substantial controversy.

On its face, Rule 407 provides no clear answer to our question. Because the drafters of Rule 407 plainly intended it this way, we find little persuasive value in the parties' arguments concerning the meaning of the term "culpable conduct" in the rule. *Compare Thibault v. Sears, Roebuck & Co.,* 118 N.H. 802, 806, 395 A.2d 843, 845–46 (1978) ("strict liability is not a no-fault system of compensation") *with Robbins v. Farmers Union Grain Terminal Ass'n,* 552 F.2d 788, 793 (8th Cir. 1977) (strict liability does not, "by its very nature," include elements of negligence or culpable conduct).

More helpful is a look at the justifications for excluding subsequent modification evidence in negligence cases and an analysis of whether these reasons apply with sufficient force in strict liability cases. Two justifications for exclusion are generally given, the first being that such evidence is only minimally relevant to prove negligence. As expressed in *Aldrich v. Railroad,* 67 N.H. 250, 251, 29 A. 408, 409 (1892):

> Accidents may happen which human foresight cannot anticipate and which human wisdom cannot prevent. They may disclose the previously undiscoverable cause, and point out a way of preventing like accidents in the future. . . . Ordinary care is the standard of duty. Between reasonable and possible precaution the distance may be wide.

In other words, it does not necessarily follow that "because the world gets wiser as it gets older, therefore it was foolish before." *Id.* at 253 (quotation omitted); *see also* 2 J. WIGMORE, EVIDENCE § 283, at 174–75 (Chadbourn rev. 1979). Under New Hampshire's liberal definition of "relevance," however, *see* N.H. R. EV. 401, this justification could not alone suffice to exclude subsequent modification evidence. *Cf. Securities & Exch. Comm'n v. Geon Industries, Inc.,* 531 F.2d 39, 52 n.16 (2d Cir. 1976); 2 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 407[02], at 407-14 (1992); 2 WIGMORE, *supra* at 175.

The controlling justification, rather, is a public policy concern that people may not "repair" their property after an accident if

such measures could be used against them in a lawsuit. *See* 2 WEINSTEIN & BERGER *supra.* "Persons are loath to take precautions which may be used as evidence against them." *Christie v. Company,* 87 N.H. 236, 238, 177 A. 300, 302 (1935). In *Aldrich v. Railroad,* this court said:

> A person may have exercised all the care which the law required, and yet, in the light of his new experience, after an unexpected accident has occurred, and as a measure of extreme caution, he may adopt additional safeguards. The more careful a person is, the more regard he has for the lives of others, the more likely he would be to do so, and it would seem unjust that he could not do so without being liable to have such acts construed as an admission of prior negligence. We think such a rule puts an unfair interpretation upon human conduct, and virtually holds out an inducement for continued negligence.

*Aldrich,* 67 N.H. at 253, 29 A. at 410 (quotation omitted). Because this rationale is grounded in "common sense" notions of the relation between human motivation and the rules of evidence, it can be criticized as lacking any real proof to support it. *See* 2 WEINSTEIN & BERGER, *supra* ¶ 407[02], at 407-15. This public policy concern, however, survives as the underlying basis for the rule in negligence cases.

■ Turning to the question at hand, we find that the public policy concern applies as well to strict liability causes of action as it does to negligence causes of action. "[A]lthough there are technical differences between negligence and strict liability, the end result—payment by a defendant—is the same. The defendant doesn't care under which theory he is sued. Therefore, to encourage defendants to take remedial measures, Rule 407 should apply in strict liability cases." Taylor & Gacioch, *supra* at 619 (analyzing cases).

Cyr relies on an Eighth Circuit case, *Robbins v. Farmers Union Grain Terminal Ass'n,* 552 F.2d 788, to support his position. This case, in turn, relies heavily on the reasoning of a California case, *Ault v. International Harvester Co.,* 528 P.2d 1148 (Cal. 1974), *see Robbins,* 552 F.2d at 793 & n.10:

> The contemporary corporate mass producer of goods, the normal products liability defendant, manufactures tens of thousands of units of goods; it is manifestly unrealistic to suggest that such a producer will forego making improvements in its product, and risk innumerable addi-

tional lawsuits and the attendant adverse effect upon its public image, simply because evidence of adoption of such improvement may be admitted in an action founded on strict liability for recovery on an injury that preceded the improvement.

*Ault,* 528 P.2d at 1152; *see also Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251, 257 n.7 (S.D. 1976). There are several problems with this analysis. First, it discounts the possible effect of an evidentiary exclusion rule on the thousands of small manufacturers doing business in this country, "whose long-term prospects become highly suspect when faced with the losses of a single short-term products liability suit." Note, *Toups v. Sears, Roebuck & Co.: Re-Assessing Admissibility of Subsequent Remedial Measures Evidence in a Products Liability Suit,* 48 LA. L. REV. 985, 998 (1988). Second, Rule 407 makes no distinction between small and mass producers. *Cf. id.* at 998 n.78. Third, even if mass producers were the only manufacturers affected by the rule, the California court's assumption about their likely behavior following an accident is open to attack. One commentator posits that corporate decision-makers might be more concerned with short-term profits than long-term, and thus avoid costly remedial measures. *Id.* at 998. Fourth, the California rationale ignores the fact that mass producers are sued for both strict liability and negligence—often in the same case, as here. The threat of mass producers delaying remedial measures did not stand in the way of New Hampshire Rule of Evidence 407, which explicitly applies to negligence cases. Because the effect of the rule on a mass producer would be the same regardless of the theory of liability, it would be illogical to apply it in negligence cases but not in cases of strict liability. *See* Taylor & Gacioch, *supra* at 619. Accordingly, we conclude that Rule 407 applies to strict liability causes of action.

Cyr next argues that Rule 407 does not apply to evidence that his employer installed a back-up alarm on the bulldozer because his employer is not a defendant in this action. We agree. Weinstein and Berger explain:

Because the controlling ground for excluding evidence has been the promotion of the policy of encouraging people to take safety precautions, remedial measures carried out by persons not party to the suit are not covered. Since the person taking the remedial measures is not affected by having the evidence admitted as an admission of fault, the admissibility of the evidence should be governed by

the general relevancy requirements of Rules 401–403 rather than Rule 407.

2 WEINSTEIN & BERGER, *supra* ¶ 407[01], at 407-11 to -12.

The trial judge in this case did in fact exclude all evidence of subsequent modifications by Cyr's employer under New Hampshire Rule of Evidence 403, but Cyr argues that this ruling was in error. Specifically, Cyr contends that the evidence "was highly relevant and probative on the issue of whether the bulldozer in question was defective and unreasonably dangerous at the time of the accident . . . [and] clearly admissible to impeach Defendants' repeated attempts to characterize [Cyr's employer] as a highly sophisticated, knowledgeable and safety conscious operation." Because a trial court's rulings under Rule 403 are entitled to some deference, *State v. VanDerHeyden,* 136 N.H. at 285, 615 A.2d at 1250, and because the evidence on remand could vary significantly from that which influenced the court's judgment at this trial, we express no opinion about the ruling. We do, however, emphasize the following points.

■ Although the evidence Cyr seeks to admit may meet the definition of relevant evidence, N.H. R. EV. 401, its probative value should not be overestimated, *see Aldrich v. Railroad,* 67 N.H. at 251, 29 A. at 409. Moreover, the relevant time frame for judging the dangerousness of the bulldozer is not the time of the accident; Cyr "must show that the [alleged] unreasonably dangerous condition existed when the product was purchased." *Thibault,* 118 N.H. at 809, 395 A.2d at 847. (Of course, Cyr could prove that the condition of the bulldozer had not changed since the day it was purchased.) We also note that in weighing the possible prejudicial effect of the evidence, the public policy concerns of Rule 407 should not be considered because they do not apply to subsequent modifications by a non-defendant. Instead, potential confusion of the issues and misleading the jury may be the primary considerations.

Cyr lastly argues that even if Rule 407 applies to strict liability causes of action, the trial court should have given him freer rein to impeach the defendants' witnesses with evidence that Case made back-up alarms standard equipment on all of its 450C bulldozers a year after the accident. *See* N.H. R. EV. 407 ("rule does not require the exclusion of evidence of subsequent measures when offered for . . . impeachment"). Specifically, Cyr wishes to impeach "Defendants' claim that the danger [of the bulldozer] was open and obvious . . . [, that] back-up alarms 'desensitize' workers . . . [, and] that back-up alarms are not necessary due to the multiple uses of

bulldozers." Again, we express no opinion about the trial court's rulings but offer some observations.

██ It is appropriate for the trial court to consider the public policy concerns behind Rule 407 when balancing the probative value of this evidence against its potential prejudicial effect. In this way, the court can prevent the impeachment exception from swallowing the rule. 2 WEINSTEIN & BERGER, *supra* ¶ 407[05], at 407-37 to -38. Thus, Cyr should not be allowed to use the subsequent modification evidence to impeach the defendants' claims that the bulldozer was not unreasonably dangerous. *See id.* ¶ 407[05], at 407-39 to -41. But if the defendants introduce evidence that back-up alarms interfere with safety in some way, it would be unfair to prevent Cyr from using Rule 407's impeachment exception to rebut such evidence. *Cf. Muzyka v. Remington Arms Co.,* 774 F.2d 1309, 1310–13 (5th Cir. 1985) (defendant's expert testified on direct that rifle involved in accident was best and safest on the market and that alternate locking design was inferior; court held that plaintiff should have been able to impeach expert with evidence that defendant adopted alternate design shortly after accident). We caution, however, that Cyr should not be permitted to impeach a defense witness with the subsequent modification evidence if the witness makes an "impeachable" statement only in response to cross-examination by Cyr designed to elicit that statement. *See* 2 WEINSTEIN & BERGER, *supra* ¶ 407[05], at 407-37 to -41.

## V. *Jury Instruction on Defense of "Plaintiff's Misconduct"*

At trial, Cyr requested the following jury instruction for the strict liability portion of the court's charge: "If the Plaintiff's misconduct was reasonably foreseeable by the Defendant and if the Defendant has not made the product reasonably safe for such misuse then you should not consider it at all in reaching your verdict." *See* W. MURPHY & D. POPE, NEW HAMPSHIRE CIVIL JURY INSTRUCTIONS § 23.6 (rev. ed. 1992). The trial court denied Cyr's request and instead instructed the jury:

> If you find that either or both defendants are liable to the plaintiff in strict liability and tort, you must next consider whether the plaintiff committed misconduct which contributed to cause his own injury. Misconduct includes abnormal use of the product, misuse of the product, failing to discover or foresee dangers which the ordinary person would have foreseen or discovered,

voluntarily and unreasonably proceeding to encounter a known danger, and perhaps other actions by the plaintiff.

If the misconduct of the plaintiff, if any, was not reasonably foreseeable by the defendant, then the defendant is not liable to the plaintiff in strict liability. If such conduct of the plaintiff was more than 50 percent responsible for causing plaintiff's injuries, then the plaintiff will not be allowed to recover. If such misconduct was 50 percent or less responsible for causing plaintiff's injuries, then you may still return a verdict in favor of the plaintiff, but the amount of the verdict will be reduced by the Court by the percentage represented by plaintiff's misconduct.

On appeal, Cyr claims error. We find none.

■ "The purpose of jury instructions is to identify issues of material fact, and to inform the jury of the appropriate standards of law by which it is to resolve them." Broderick v. Watts, 136 N.H. 153, 163, 614 A.2d 600, 607 (1992). So long as a trial court meets this standard, it is not obligated to adopt a party's requested instruction. See Chellman v. Saab-Scania AB, 138 N.H. 73, 82, 637 A.2d 148, 153 (1993). We find the court's instruction proper and Cyr's proposal an incorrect statement of the law.

In Thibault v. Sears, Roebuck & Co., 118 N.H. at 813, 395 A.2d at 850, this court "judicially recognize[d] the comparative concept in strict liability cases." See RSA 507:7-d (Supp. 1993). This concept allows a defendant to assert the plaintiff's misconduct as an affirmative defense. See id.; see also Chellman, 138 N.H. at 81, 637 A.2d at 152. The correct application of this defense forms the root of the conflict between the trial court's instruction and Cyr's proposal. Under Cyr's proposal, the defendants could only use the defense if they proved that Cyr's alleged misconduct was unforeseeable. Under the trial court's instruction, the defendants could use it regardless of foreseeability.

We agree with the defendants that the foreseeability of a plaintiff's misconduct should not bar a defendant's use of this defense. Cf. Heath v. Sears, Roebuck & Co., 123 N.H. 512, 528–29, 464 A.2d 288, 297–98 (1983). In a strict liability case based on an allegation of a defectively designed product, part of the plaintiff's case-in-chief requires proof that his or her use of the product—including any misconduct—was foreseeable. Thibault, 118 N.H. at 809, 395 A.2d at 847. If Cyr's alleged misconduct were unforeseeable, Cyr would lose his case before any consideration were given to an affirmative defense such as "plaintiff's

misconduct." Consequently, if the defendants were only allowed to use this defense when the misconduct was unforeseeable, the defendants would never be able to use it all. Because it makes no sense to recognize a defense that can never be used, we find that Cyr's proposed defense would run afoul of this court's ruling in *Thibault,* as well as the legislature's expressed intent. *See* RSA 507:7-d.

*Reversed and remanded.*

HORTON, J., with whom THAYER, J., joined, dissented; the others concurred.

HORTON, J., dissenting: I dissent from the majority opinion. That opinion asserts, and bases its mandate on the assertion, that it was error for the trial judge to admit evidence of the existence of workers' compensation benefits available to the plaintiff. It holds that the admission "plainly fails the balancing test contained in New Hampshire Rule of Evidence 403" and that "the court plainly abused its discretion in admitting evidence of Cyr's receipt of workers' compensation benefits." I do not find the conclusion so plain. The admission of this evidence, in my view, is within the discretion of the trial court.

The record establishes that there was a dispute over the plaintiff's claim for lost wages and the evidence of alternate income was both relevant and probative. The plaintiff asserts Rule 403 prejudice in the realm of damages, based on the principles behind the collateral source rule. The trial court structured a limiting instruction to avoid violation of the collateral source rule in the calculation of damages. The prejudice side of the scale is lightened by the fact that, when the evidence was admitted, the plaintiff had already entered medical records with clear reference to the presence of workers' compensation benefits. The record positions this admission question within the discretion of the trial court. Even if this prejudice, as tempered by the instruction, was, as a matter of law, overwhelming and mandates a finding of error, the error is harmless, since the jury decided this case on liability and did not reach the issue of damages. *MacFarlane v. Rich,* 132 N.H. 608, 612–13, 567 A.2d 585, 589 (1989); *Panas v. Harakis,* 129 N.H. 591, 610–11, 529 A.2d 976, 988 (1987).

The majority opinion looks beyond the prejudice balance asserted by the plaintiff and suggests that we add "confusion of the issues" to the exclusion side of the scale. It suggests that under the trial court's limiting instruction, the jury will have trouble separating the impermissible setoff from damages from the

permissible challenge to the lost wages claim. This distinction is not particularly sophisticated and was well drawn in the limiting instruction. We assume that the jury follows properly crafted instructions, and we follow a presumption of understanding. *Watkins v. Railroad,* 84 N.H. 124, 128, 146 A. 865, 867 (1929).

The ruling on admission was within the discretion of the trial court.

The plaintiff raises other issues on appeal that are either not reached in the majority opinion or addressed in the context of "likely to arise again on remand." I do not reach these issues and reserve my opinion thereon. In light of this position, I take no position on the mandate of the majority opinion.

THAYER, J., joins in the dissent.