Ciardello v. Maxfli                         CV-94-348-SD    12/19/95
                    UNITED STATES DISTRICT COURT FOR THE

                         DISTRICT OF NEW HAMPSHIRE


Gerald M. Ciardello


     v.                                        Civil No. 94-348-SD


Maxfli


                              O R D E R


     In this diversity action, plaintiff Gerald M. Ciardello

asserts claims of (1) negligence, (2) breach of warranty of

merchantability, and (3) strict liability against defendant

Maxfli for injuries allegedly suffered when, after being heated

in a microwave oven, a golf ball manufactured by defendant

exploded in plaintiff's hand.

     Presently before the court is Maxfli's motion for summary

judgment, to which plaintiff objects.


                        Factual Background

     At the time he filed his complaint, Ciardello resided in

Windham, New Hampshire.  Amended Complaint ¶ 2.[1]  Maxfli is a

_____

     [1]In a letter to defense counsel, Ciardello indicated that
"[a]lthough I am in the process of establishing a new residence
. . . [y]ou may continue to write me at my Windham address

South Carolina corporation engaged in the business of manufacturing and selling golf balls. Amended Complaint ¶¶ 3, 4.

On or about July 2, 1991, plaintiff was preparing for his weekly golf match at Hickory Golf Club in Methuen, Massachusetts. Ciardello Deposition at 86, 129-30 (attached to Defendant's Motion for Summary Judgment). Because warmed golf balls allegedly travel farther and bounce better than those at air temperature, id. at 139, plaintiff contends that he commonly heated golf balls before playing, id. at 140-41.[2]

Plaintiff contends that he had previously used a microwave oven to heat 90-compression Maxfli golf balls approximately six times without incident. Id. at 101-02. The first time he attempted to heat a 100-compression golf ball, however, it exploded in his hand as he attempted to retrieve it from the microwave oven. Id. at 129-40.

_____

. . . ." April 26, 1995, Letter from Ciardello to John M. Curran, Esq.

[2]Plaintiff asserts that he had previously used a variety of methods to warm golf balls, including hot water from a faucet, direct sunlight, and specially-made electric warmers. Ciardello Deposition at 131, 135, 137.

2

<u>Discussion</u>

1.  <u>Summary Judgment Standard</u>

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.  At this stage, the court's "function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

In considering whether or not a genuine issue of material fact exists, the evidence of the nonmoving party is to be believed and all justifiable inferences are to be drawn in his favor.  <u>Id.</u> at 255.  The moving party bears the burden of demonstrating that there is no genuine issue as to any material fact.  <u>Finn v. Consolidated Rail Corp.</u>, 782 F.2d 13, 15 (1st Cir. 1986).  "To demonstrate that no genuine issue of material fact exists, the moving party must point out 'an absence of evidence supporting the nonmoving party's case.'"  <u>Oliver v. Digital Equip. Corp.</u>, 846 F.2d 103, 105 (1st Cir. 1988) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986)).

"Once the defendant has made a properly supported motion for

3

summary judgment, however, [plaintiff] 'may not rest upon mere allegation or denials of [his] pleading, but must set forth specific facts showing there is a genuine issue for trial.'" Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Anderson, supra, 477 U.S. at 250 (citing Rule 56(e), Fed. R. Civ. P.)), cert. denied, ___ U.S. ___, 115 S. Ct. 56 (1994).  "The nonmoving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of material fact."  Mendes v. Medtronic, Inc., 18 F.3d 13, 15 (1st Cir. 1994) (citing Celotex, supra, 477 U.S. at 325); see also Casas Office Machs. v. Mita Copystar Am., 42 F.3d 668, 679 (1st Cir. 1994) (after defendant alleged an absence of sufficient evidence, plaintiff was required to come forth with evidence to survive summary judgment).

"Thus, summary judgment is proper when, after adequate time for discovery, the party against whom judgment is sought fails to show sufficient basis for the establishment of an essential element of its case."  Kauffman v. Puerto Rico Tel. Co., 841 F.2d 1169, 1172 (1st Cir. 1988) (citing Moody v. Maine Central R.R., 823 F.2d 693, 694 (1st Cir. 1987) (citing Celotex, supra, 477 U.S. at 325)).

4

## 2. Plaintiff's Allegations of Negligence

In Count I of his amended complaint, plaintiff alleges that "[d]efendant was negligent in the design and manufacture of said golf ball and in its failure to warn of the defects and dangers of said golf ball." Amended Complaint ¶ 10. The court reads Count I to raise two separate negligence theories; namely, negligent design/manufacture and negligent failure to warn.

### a. Negligence in the Context of Products Liability

Generally, "[a] plaintiff claiming negligence must show that the defendant owed the plaintiff a duty, that the duty was breached, that the plaintiff suffered an injury, and that the defendant's breach was the proximate cause of the injury." Ronayne v. State, 137 N.H. 281, 284, 632 A.2d 1210, 1212 (1993) (citing Wright v. Dunn, 134 N.H. 669, 672, 596 A.2d 792, 731 (1991)).[3] "In the present case, 'whether the defendants' conduct created such a foreseeable risk of harm to the . . . plaintiff that defendants were under a duty to avoid it,' is a question of

---

[3]"Once the line is crossed from ordinary negligence into products liability, duty is based upon the conduct of the manufacturer . . . in designing, manufacturing, testing and inspecting, and warning and instructing about the product." 2 LOUIS R. FRUMER & MELVIN I. FRIEDMAN, PRODUCTS LIABILITY § 10.01, at 10-12 (1994). "The manufacturer's duty extends only to foreseeing the probable result of normal use of the product." 8 RICHARD B. MCNAMARA, NEW HAMPSHIRE PRACTICE: PERSONAL INJURY § 248, at 242 (1988) (emphasis added).

law to be determined in the first instance by the trial court."
Goodwin v. James, 134 N.H. 579, 583, 595 A.2d 504, 506-07 (1991)
(quoting Paquette v. Joyce, 117 N.H. 832, 834-35, 379 A.2d 207,
209 (1977)) (other citation omitted).


### b. Negligent Design and Manufacture

Whereas a manufacturing defect occurs when, due to a
variation in the manufacturing process, the product does not
conform to the majority of products manufactured with that
design, MCNAMARA, supra note 3, § 246, at 239, "[a] design defect
occurs when the product is manufactured in conformity with the
intended design but the design itself poses unreasonable dangers
to consumers," Thibault v. Sears, Roebuck & Co., 118 N.H. 802,
807, 395 A.2d 843, 846 (1978) (citation omitted).  In order to be
successful at trial on this theory of negligence, plaintiff must
prove by a preponderance of the evidence that defendant violated
its duty of due care in the design and manufacture of the golf
ball in question and that the breach of such duty caused
plaintiff's injuries.  See Goodwin, supra, 134 N.H. at 583, 595
A.2d at 507.[4]

---

[4]The court notes that in this area of negligence law, "Like
strict liability, . . . a manufacturer does not have to design
the best possible product, or an accident-proof product, so long

6

There can be no liability on plaintiff's negligence theory without evidence that defendant violated the standard of due care in the design or manufacture of the golf ball. See <u>Walker v. General Elec. Co.</u>, 968 F.2d 116, 118 (1st Cir. 1992) (suit for fire damage allegedly caused by a malfunctioning toaster oven) (interpreting Maine law). The First Circuit upheld a directed verdict for the defendant in <u>Walker</u> because, although there was evidence of malfunctioning, there was no evidence that the defendant violated its duty of care in the design or manufacture of the toaster oven. <u>Id.</u>

Similarly in the case at bar, plaintiff has produced no evidence that defendant breached its duty of care. Nothing in the pleadings suggests that there was any problem with the golf ball or that there was any negligence on the part of the defendant in designing or manufacturing the golf ball.

Insofar as plaintiff's claim raises nothing more than mere allegations and sets forth no specific facts regarding defendant's allegedly negligent conduct, <u>see</u> <u>Snow</u>, <u>supra</u>, 12 F.3d at 1157, the court finds and rules that no reasonable juror could find in plaintiff's favor on the negligent design and manufacture claim.

---

as the product is reasonably safe for its intended use or reasonably foreseeable use." FRUMER & FRIEDMAN, <u>supra</u> note 3, § 11.03[2], at 11-52.

c.  Negligent Failure to Warn

Plaintiff's negligent failure to warn claim is grounded upon the theory that defendant should provide warnings regarding the dangers inherent in heating a golf ball in a microwave oven. Under New Hampshire law, "[t]he duty to warn is part of the general duty to design, manufacture and sell products that are reasonably safe for their foreseeable uses."  Chellman v. Saab-Scania AB, 138 N.H. 73, 78, 637 A.2d 148, 150 (1993) (citing Thibault, supra, 118 N.H. at 807-08, 395 A.2d at 847).

To be successful at trial on this negligence theory, plaintiff must prove by preponderant evidence defendant's failure to exercise ordinary prudence in relation to warnings and instructions.  See Cheshire Medical Ctr. v. W.R. Grace & Co., 49 F.3d 26, 29-30 (1st Cir.), cert. denied, ___ U.S. ___, 116 S. Ct. 304 (1995); see also Laaperi v. Sears, Roebuck & Co., 787 F.2d 726, 729 (1st Cir. 1986) ("the failure to warn of hazards associated with foreseeable uses of a product is itself negligence, and if that negligence proximately results in a plaintiff's injuries, the plaintiff may recover") (citation omitted) (interpreting Massachusetts law).

However, "[m]anufacturers cannot foresee and warn of all absurd and dangerous uses of their product."  Thibault, supra, 118 N.H. at 808, 395 A.2d at 847.  Consequently, the New

8

Hampshire Supreme Court has "reject[ed] cases that demand that a manufacturer warn against uses which were neither <u>intended by the manufacturer</u> nor within the reasonably <u>foreseeable use of the product</u>." <u>Id.</u> (emphasis added).

Although plaintiff alleges that the practice of heating golf balls was widely recognized in the golf industry, he has provided this court with no reliable evidence to suggest that defendant could have foreseen plaintiff's use of a microwave oven for such purpose.[5] Plaintiff himself notes only two foreseeable uses of a golf ball: for playing golf and for decoration. Ciardello Deposition at 180.

In ruling on summary judgment, the court acknowledges that it is required to draw all justifiable inferences in plaintiff's favor. <u>Anderson</u>, <u>supra</u>, 477 U.S. at 255. Despite this generous standard, plaintiff has not produced any competent evidence to

---

[5]Attached to plaintiff's objection is a letter from Titleist, another golf ball manufacturer, which states, "Microwaving golf balls is a bad idea. Some balls; for example, the Titleist Tour Balata, have liquid centers which when overheated can explode destroying the golf ball and perhaps your microwave." As an initial matter, the court notes that the letter is dated August 26, 1993, some two years subsequent to plaintiff's injury, and as such is not relevant to defendant's purported knowledge at the time of the injury. Moreover, despite plaintiff's contention that "it is clear from the [Titleist letter] that Maxfli's competitors conducted such tests and that it is likely that Maxfli also has," Objection at 7, <u>Titleist's</u> knowledge regarding the heating of golf balls does not, without more, provide evidence as to Maxfli's knowledge of same.

suggest that defendant could have foreseen plaintiff's use of a microwave oven to heat a golf ball and has similarly failed to produce any evidence that defendant failed to exercise due care in its instructions to their intended consumers. The court finds that because plaintiff has not produced sufficient, competent facts regarding the foreseeability of heating a golf ball in a microwave oven or defendant's alleged failure to exercise due care in warning of same, he cannot sustain his burden of proof for his negligent failure to warn claim. See Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 6 (1st Cir. 1994) ("There is no trialworthy issue unless there is sufficient competent evidence to enable a finding favorable to the opposing party.") (citing Anderson, supra, 477 U.S. at 248-49). Accordingly, defendant's motion for summary judgment is granted as to the negligence claims.

### 3. Count II: Breach of Implied Warranty of Merchantability

In Count II of his amended complaint, plaintiff alleges that defendant breached its warranty of merchantability, Amended Complaint ¶ 16, because the golf ball in question was not "of merchantable quality for use as a golf [ball]," id. ¶ 15.

As there is no common law breach of warranty in New Hampshire, plaintiff's right of recovery, if any, is provided in

10

New Hampshire Revised Statutes Annotated (RSA) 382-A:2-314 (1994).  "RSA 382-A:2-314 generally provides that a seller impliedly warrants that his goods are merchantable or generally fit for the 'ordinary purposes' for which the goods are used, unless the seller validly excludes or modifies the warranty." Xerox Corp. v. Hawkes, 124 N.H. 610, 616, 475 A.2d 7, 9 (1984);[6] accord H.G. Fischer X-Ray Co. v. Meredith, 121 N.H. 707, 710, 433 A.2d 1306, 1308 (1981) ("Absent a valid disclaimer, see RSA 382-

---

[6]RSA 382-A:2-314 specifically provides:

(1) Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
(2) Goods to be merchantable must be at least such as
    (a) pass without objection in the trade under the contract description; and
    (b) in the case of fungible goods, are of fair average quality within the description; and
    (c) are fit for the ordinary purposes for which such goods are used; and
    (d) run, within the variations permitted by the agreement, of even kind, quality and quantity with each unit and among all units involved; and
    (e) are adequately contained, packaged, and labeled as the agreement may require; and
    (f) conform to the promises or affirmations of fact made on the container or label if any; . . . .

11

A:2-316, any express warranties made by the seller and an implied warranty of merchantability attach to goods that are the subject of a sale.").

If plaintiff is to succeed on his breach of implied warranty of merchantability claim, "there must be actual proof of such noncompliance with the warranty. 'A plaintiff may not rely on the sole fact that an accident occurred.'" FRUMER & FRIEDMAN, supra note 3, § 9.04[3], at 9-49 (citation omitted). Therefore, plaintiff must provide the court with evidence that the product was unfit for its ordinary use.

Plaintiff has admitted that he does not know if the ball was defective and has not submitted to the court any evidence that would support such a conclusion. The court finds that as plaintiff has not presented specific facts which would support a finding that the golf ball was unfit for its ordinary purposes, Colantuoni, supra, 44 F.3d at 6, he cannot sustain his burden at trial, Snow, supra, 12 F.3d at 1157. Accordingly, defendant's motion for summary judgment is granted as to the claimed breach of implied warranty of merchantability.

4. Count III: Strict Liability

In Count III of his amended complaint, plaintiff alleges strict liability against defendant, claiming that Maxfli's sale

12

of its golf balls "was dangerous and created a high degree of risk of great harm to plaintiff," Amended Complaint ¶ 22, and resulted in plaintiff's injuries, id. ¶ 23.

New Hampshire adopted the RESTATEMENT (SECOND) OF TORTS analysis of strict liability in Buttrick v. Arthur Lessard & Sons, Inc., 110 N.H. 36, 260 A.2d 111 (1969),[7] and the ensuing twenty-six years of jurisprudence have made the court "well aware of 'the confusion that has been generated by [that doctrine].'" Dudley v. Business Express, Inc., 882 F. Supp. 199, 208 (D.N.H. 1994) (quoting Chellman, supra, 138 N.H. at 77, 637 A.2d at 150, and citing Buttrick, supra, 110 N.H. at 37-38, 260 A.2d at 112).

---

[7]The RESTATEMENT (SECOND) OF TORTS § 402A states:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
> (a) the seller is engaged in the business of selling such a product, and
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
> (2) The rule stated in Subsection (1) applies although
> (a) the seller has exercised all possible care in the preparation and sale of his product, and
> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

In order for a defendant to be liable in strict liability, the plaintiff must prove the existence of a "defective condition[8] unreasonably dangerous to the user." Thibault, supra, 118 N.H. at 807, 395 A.2d at 846 (citing Buttrick, supra, 110 N.H. at 38-39, 260 A.2d at 113; Bellotte v. Zayre Corp., 116 N.H. 52, 352 A.2d 723 (1976)). "In a strict liability case based on an allegation of a defectively designed product, part of the plaintiff's case-in-chief requires proof that his or her use of the product--including any misconduct--was foreseeable." Cyr v. J.I. Case Co., 139 N.H. 193, ___, 652 A.2d 685, 695 (1994) (citing Thibault, supra, 118 N.H. at 809, 395 A.2d at 847).

"'A product is not in a defective condition when it is safe for normal handling and consumption. If the injury results from abnormal handling . . . or from abnormal preparation for use, . . . the seller is not liable.'" Porter v. Pfizer Hosp. Prods. Group, Inc., 783 F. Supp. 1466, 1474 (D. Me. 1992) (quoting RESTATEMENT, supra note 7, § 402A cmt. h, at 351); accord McLaughlin v. Sears, Roebuck & Co., 111 N.H. 265, 268, 281 A.2d 587, 588 (1971) ("The duty of the manufacturer or supplier is limited to foreseeing the probable results of the normal use of

---

[8]Under the Thibault court's analysis, "an inadequate warning constitutes a design 'defect.'" Duford v. Sears, Roebuck & Co., 833 F.2d 407, 411 (1st Cir. 1987); accord Cheshire Medical Ctr., supra, 49 F.3d at 29 (strict liability in New Hampshire includes warning defect) (citations omitted).

14

the product or a use that can reasonably be anticipated.")
(citations omitted).

The New Hampshire Supreme Court, in the products liability case of <u>Foss v. Byrnes Chevrolet, Inc.</u>, 119 N.H. 808, 408 A.2d 415 (1979), observed "that '[t]here will seldom be a case based upon strict liability where a person will be able to testify from his personal knowledge that a particular product was sold in a certain defective condition.'" <u>Id.</u> at 810, 408 A.2d at 416 (quoting <u>Lindsay v. McDonnell Douglas Aircraft Corp.</u>, 460 F.2d 631, 639 (8th Cir. 1972) (citation omitted)).[9] In the case at bar, plaintiff has disclosed no witnesses, expert or lay, to testify as to the allegedly defective condition of the golf ball.[10] Plaintiff stated in his deposition that he has no

---

[9]In addition to plaintiff's lack of evidentiary support for his contention that the golf ball was defective, plaintiff has further failed to raise a genuine issue concerning proximate causation. Although there is no general rule requiring expert testimony, the court notes the position recently taken by the New Hampshire Supreme Court that such "testimony is required whenever 'the matter to be determined is so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman.'" <u>Lemay v. Burnett</u>, ___ N.H. ___, ___, 660 A.2d 1116, 1117 (1995) (quoting <u>District of Columbia v. Freeman</u>, 477 A.2d 713, 719 (D.C. 1984)) (quotation omitted in <u>Lemay</u>) (other citation omitted).

[10]The discovery schedule set in this case contemplated disclosure of plaintiff's experts and experts' written reports by February 1, 1995. No such disclosure was then made, nor has same occurred as of the date of this order. Plaintiff has complained to the court about his difficulties in obtaining appropriate discovery of the defendant, <u>see</u> Objection at 6-8, and the court,

15

evidence that the ball was defective, Ciardello Deposition at 192, and that he is not an expert in golf ball design, id. at 183.

The court finds that without such expert testimony, plaintiff's allegations remain mere conjecture, as he has no competent evidence beyond his own speculation regarding the condition of the golf ball. More importantly, defendant's showing on summary judgment effectively shifted the evidentiary burden back to plaintiff regarding the foreseeability of his golf ball warming technique; a burden which plaintiff has failed to properly shoulder. Such failure of proof short-circuits plaintiff's ability to recover under any strict liability theory. See Cyr, supra, 139 N.H. at ___, 652 A.2d at 695. Accordingly, defendant's motion for summary judgment must be and herewith is granted as to the strict liability claim.

## Conclusion

For reasons set forth herein, defendant's motion for summary judgment (document 10) must be and herewith is granted in its

_____

in recognition of same, denied defendant's motion to stay discovery in order to provide plaintiff with time to obtain appropriate evidence. Nothing that appears in the record, however, goes beyond plaintiff's own rank speculation and unsupported, self-serving conclusions.

16

entirety.  The clerk is instructed to close the case and enter judgment accordingly.

    SO ORDERED.


                                      _____
                                      Shane Devine, Senior Judge
                                      United States District Court

December 19, 1995

cc:  Gerald M. Ciardello, pro se
     Arthur G. Greene, Esq.

17